**Helen MARMON, Respondent,**

v.

**CITY OF COLUMBIA; Appellant,**

**Treasurer of Missouri as Custodian of the Second Injury Fund, Respondent.**

**No. WD 62057.**

Missouri Court of Appeals, Western District.

March 30, 2004.

Richard L. Montgomery, Jr., Columbia, MO, for Appellant City of Columbia.

B. Michael Korte, St. Louis, MO, for Respondent Marmon.

Jeanne S. Velders, Attorney, Earl D. Krause, Co–Counsel, Jefferson City, MO, for Respondent State of Missouri.

Before SMART, P.J., ULRICH and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

The City of Columbia (City) appeals from a final award of the Labor and Industrial Relations Commission finding that Helen Marmon sustained a permanent total disability, while working for the City, and was entitled to workers' compensation benefits. The City contends the award is against the overwhelming weight of the evidence and, therefore, is unsupported by substantial evidence. We affirm in part and reverse in part.

FACTUAL AND PROCEDURAL HISTORY

Marmon had been a part-time bus driver with the City of Columbia ("City") for approximately two months when she was injured in a vehicle accident on April 5, 1996. As part of her training, Marmon was standing behind the driver of a bus, who was showing her how to make a proper turn. The bus was struck by another vehicle, and Marmon fell forward into the dashboard and onto the floor. She was taken to a hospital and released the same day, after being diagnosed with a chest wall contusion and neck strain.

Marmon began experiencing back and hip pain within three days of the bus accident. The City referred her to Dr. Jennifer Clark, at the Columbia Orthopedic Group, for evaluation and treatment. At Dr. Clark's request, a spinal MRI was conducted on May 17, 1996. The results of the MRI were reported as "absolutely normal" and "negative for disc herniation." On June 24, 1996, Dr. Clark released Marmon to return to work with no restrictions. In her final report dated August 8, 1996, Dr. Clark concluded Marmon did not suffer a disability as a result of the bus accident.

Marmon briefly returned to her part-time driver duties but quit because the constant bus vibrations aggravated her back and hip discomfort. She began a new job as a substitute teacher with the Columbia Public School District on August 20, 1996. Marmon experienced pain in her back and left leg when she had to walk up and down the stairs or sit for prolonged periods at various schools. She requested additional medical treatment from the City and was referred back to Dr. Clark. Instead of contacting Dr. Clark, Marmon opted to seek treatment from her own physician, Dr. Kristen Malaker, in early September 1996. Marmon also filed a workers' compensation claim against the City and the Second Injury Fund on October 17, 1996.

After prescribing pain medication and physical therapy, Dr. Malaker sent Marmon to an orthopedic surgeon, Dr. Robert Gaines, because her chronic back pain persisted. Dr. Gaines ordered two spinal MRIs in March 1997, both of which showed mild degenerative changes but were reported as normal without evidence of a herniated disc.

A year later, Dr. Gaines referred Marmon to Dr. John Oro, a neurosurgeon, for further pain evaluation. Dr. Oro recommended another MRI, which was conducted on April 7, 1998. The radiologist reported a small herniation on the left side of the L4–5 disc.

Based on the MRI findings, Dr. Gaines performed surgery on June 23, 1998, to relieve pressure from the herniated disc. After removing the L4–5 disc, Dr. Gaines noted that a "fragment" of the disc tissue seemed to have been "prolapsing in and out" of the disc space. Dr. Gaines diagnosed Marmon with "herniated disc pulposa" on the hospital discharge summary.

Marmon's back pain worsened following surgery, causing her to quit her job as a substitute teacher. A morphine pump was implanted for pain management. The pump was later replaced with a morphine patch, which Marmon continued to use at the time of the October 25, 2001 hearing on her workers' compensation claim.

At the hearing, Marmon contended she suffered a disc herniation as a result of the bus accident, leaving her permanently and totally disabled. She presented deposition testimony from Dr. Oro and her retained experts: Dr. David Volarich, an osteopathic physician; and James England, a rehabilitation counselor. Marmon sought disability benefits, payment of her medical

bills after being released by Dr. Clark, and future medical care benefits.

The City disputed Marmon's claim, relying on Dr. Clark's report that she suffered no disability from the bus accident and could return to work without restrictions by June 1996. The City's expert, Dr. James Coyle, a neurosurgeon, further testified by deposition that Marmon currently has a degenerative back condition that dates back to a 1988 work-related back injury, for which she received a workers' compensation award for a 15% whole body permanent disability. The Second Injury Fund presented deposition testimony from its expert, Dr. Joel Jeffries, an orthopedic surgeon, to dispute that Marmon's pre-existing injury contributed to her chronic back condition following the April 5, 1996 bus accident.

Following the workers' compensation hearing, the Administrative Law Judge (ALJ) found Marmon was 15% permanently disabled as a result of the low back injury she suffered in the bus accident. The ALJ concluded Marmon reached maximum medical improvement within a few months after the bus accident and prior to the time she was referred to Dr. Gaines for treatment in September 1996. Marmon was awarded sixty weeks of disability benefits at the stipulated rate of $200 per week, for a total award of $12,000. The ALJ denied the Second Injury Fund claim, as well as Marmon's claim for payment of medical bills she incurred and future medical care benefits.

At Marmon's request, the Labor and Industrial Relations Commission reviewed and modified the ALJ's decision. The Commission determined, with one member dissenting, that Marmon was permanently and totally disabled as a result of the April 5, 1996 bus accident. Marmon was awarded disability benefits of $200 per week for life and future medical care benefits for pain management. The Commission denied the claim for past medical bills because Marmon sought the treatment at her own expense, without conferring with Dr. Clark or informing the City about the surgery recommended by Dr. Gaines. While no express ruling was made regarding the Second Injury Fund, the Commission implicitly denied any claim against the Fund by holding the City solely liable for the benefits awarded.

The City appeals, contending there was no substantial evidence to support the Commission's finding of a total permanent disability resulting from the bus accident. The City also contends there was no substantial evidence to support the award of future medical care benefits.

### STANDARD OF REVIEW

■ On an appeal from the Commission, this court will not disturb a final award unless the Commission acted without or beyond its power, the award is procured by fraud, the facts found do not support the award, or the award is not supported by sufficient competent evidence in the record. Section 287.495.1.[1] We examine the whole record to determine the sufficiency of the evidence. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). If the award is contrary to the overwhelming weight of the evidence, it is not supported by substantial evidence and must be reversed. *Id.* at 223.

### Discussion of Issues on Appeal

■ The City contends there was no substantial evidence to support the Com-

1. All statutory references are to Revised Statutes of Missouri (2000) unless otherwise noted.

mission's finding that Marmon was totally and permanently disabled as a result of the bus accident because the overwhelming weight of the evidence established that: (1) Marmon did not have a herniated disc and, therefore, had no need for the back surgery that ultimately resulted in her failed back syndrome; (2) Marmon was able to work as a substitute teacher for two years following the bus accident; and (3) Marmon's overall condition resulted from her pre-existing and subsequent disabilities unrelated to the bus accident. We review the entire record to determine whether the evidence was weighted against the award of benefits.

The Commission based its disability finding on the expert testimony of Dr. David Volarich and James England. After interviewing and examining Marmon and reviewing her medical records, Dr. Volarich diagnosed her with a herniated disc at the L4–5 level and failed back syndrome caused by scar tissue from the back surgery. He concluded the bus accident was a substantial contributing factor in both conditions. Dr. Volarich rated Marmon with a 50% permanent partial disability due to the "disc herniation at L4–5 … that required surgical repair." He acknowledged Marmon had a 15% permanent partial disability from her prior back injury and, thus, concluded the two disabilities combined for a 65% permanent partial disability. Dr. Volarich opined Marmon would be totally disabled if a vocational assessment was unable to identify any jobs for which she was suitable.

James England conducted the vocational assessment. Based on Marmon's degree of back pain and medicational side effects, England concluded she would be unable to compete for or sustain employment in the open labor market.

The Commission expressly found credible the deposition testimony of Dr. Vola-

rich and England. Relying on that testimony, the Commission ruled "the April 5, 1996 injury alone has produced the residual pain and limitations that render claimant permanently and totally disabled."

The City contends the overwhelming weight of the evidence contradicts Dr. Volarich's conclusion that Marmon had a herniated disc that required surgery and led to her failed back syndrome. The City points out that Dr. Volarich is an osteopathic specialist in nuclear medicine and disability evaluation, not a surgeon. Dr. Volarich did not review any of the MRI film and relied solely on Dr. Gaines' medical reports regarding Marmon's June 23, 1998 back surgery. Dr. Gaines' surgical notes state:

> The L4–L5 interspace was entered. The L5 nerve root on the left side was adherent to the disc space and was separated with difficulty from the underlying disc. Initial exploration indicated that there was very little compression on the root. For that reason, a right-sided exploration was carried out, which also indicated that the L4–L–5 disc was flat. We then reexplored the left side and identified that the posterior annulus fibrosis at the L4–L5 space was quite soft. For that reason, a window was made in the L4–L–5 annulus on the left side and then the disc tissue was removed from the L4–L5 disc. There was a fragment, identical to that seen on the magnetic resonance image, which was removed from the L4–L5 interspace.
>
> It seemed that the fragment had been prolapsing in-and-out of the disc space. There was no free fragment.

The City argues these surgical notes do not establish that Dr. Gaines found the L4–5 disc was herniated. The City presented testimony from Dr. James Coyle, a spinal surgeon who explained that a herniation is a protrusion or bulge in the disc

tissue that generally causes pain by compressing the spinal nerve roots. Dr. Coyle opined that Marmon's L4–5 disc was not herniated because, as Dr. Gaines surgical notes indicate, there was very little compression on the nerve root. Dr. Coyle also noted that three of the four MRI's, performed within two years of the bus accident, were reported normal without evidence of herniation. Dr. Joel Jeffries, a spinal surgeon who testified as an expert for the Second Injury Fund, generally agreed that it would be "possible" but "unlikely" for a doctor to miss a herniation on more than one MRI.

Dr. Coyle observed that the fragmented condition of Marmon's disc tissue was more consistent with degenerative lumbar disease than a finding of herniation. He pointed out that medical records from Marmon's prior work related injury indicate she was diagnosed with a degenerative condition at the L4–5 level in 1989. The medical records and MRI film led Dr. Coyle to conclude Marmon did not have "a disc herniation caused by the bus accident."

Without clear evidence of a disc hernia, the City contends there was no need for the back surgery that left Marmon with failed back syndrome. The City argues Marmon was able to work as a substitute school teacher for two years following the 1996 bus accident and up until the surgery which worsened her condition in 1998. They point to this fact as proof that Marmon was not totally disabled as a result of injuries sustained in the bus accident, but rather as a result of Dr. Gaines' improvident decision to surgically repair a nonexistent disc herniation.

The City further argues the evidence against Dr. Volarich's opinion was over-whelming because Dr. Oro and Dr. Jeffries agreed with Dr. Coyle that there was no evidence of a disc herniation. The record does not support this assertion. Although Dr. Oro suggested Marmon have a fourth MRI performed in 1998, he testified he never saw the results of that MRI. Dr. Oro also never reviewed Dr. Gaines' surgical notes and was unable to comment on what Dr. Gaines may have found during the surgery. Similarly, Dr. Jeffries did not review the fourth MRI and testified that he could not disagree with Dr. Gaines' assessment that Marmon had a disc herniation at the time of her June 1998 surgery.

The City's argument also ignores other considerable evidence in the record to support the Commission's determination that the bus accident caused a herniation which required surgical repair. First, Dr. Volarich examined Marmon and conducted testing to determine the nature of her injury.[2] He found weakness in her left leg muscles, which was consistent with herniated pressure on the nerve root at the L5 disc level. He noted from the medical records that she began experiencing back pain within days of the bus accident. Dr. Volarich concluded the accident likely caused a disc hernia that worsened over the next two years, as indicated by Marmon's gradually increased back pain. He found nothing in her medical records to suggest an intervening cause for the herniation between the time of the bus accident and the back surgery.

Second, Dr. Gaines' surgical notes reported that a fragment of Marmon's L4–5 disc tissue seemed to be prolapsing in and out of the disc space. He specified that the fragment remained connected to the disc and was consistent with the herniation

2. This type of testing and evaluation was well within Dr. Volarich's expertise of rehabilitative medicine.

seen on the fourth MRI. Dr. Jeffries confirmed it was possible for herniated disc tissue to move in the manner described by Dr. Gaines. This evidence of a prolapsing disc tissue fragment reasonably explains why Marmon's herniation may not have been ascertainable on three of her four MRIs and was difficult to diagnose without surgery. Dr. Volarich also testified that the MRI is not the definitive test for diagnosing disc herniation, and there may be other "technical reasons" why the imaging cuts showed different results.

Third, Dr. Gaines' discharge summary, following the back surgery, clearly stated his diagnosis as "herniated nucleus pulposa." Thus, although Dr. Coyle may dispute whether the surgical notes describe a herniation, the discharge summary clarifies Dr. Gaines' ultimate determination that a herniation was found.

Fourth, Dr. Jeffries rebutted the City's claim that Marmon's pre-existing back injury contributed to her current condition. He noted from the medical records that Marmon was gainfully employed after being treated for the prior injury and had no ongoing complaints of back pain in the few years preceding the bus accident.

■ The record as a whole supports Dr. Volarich's opinion that Marmon suffered a disc herniation as result of the April 5, 1996 bus accident. The hernia required surgical repair, which left Marmon with considerable scar tissue and increased pain from failed back syndrome. Dr. Volarich reasonably concluded that Marmon was 50% permanently disabled as a result of her injuries from the bus accident. Although there is contrary testimony from Dr. Coyle, the evidence is not overwhelming and the Commission made a specific

finding that Dr. Volarich's testimony was credible. Questions regarding medical causation are issues of fact to be determined by the Commission. *Bock v. Broadway Ford Truck Sales, Inc.* 55 S.W.3d 427, 438 (Mo.App. E.D.2001). The Commission is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.* Because there is substantial and competent evidence in the record to support the credibility determination, the Commission could reasonably rely on Dr. Volarich's opinion in determining that Marmon was disabled by her injuries from the bus accident. We find no error in the Commission's decision that she was entitled to permanent disability benefits and future medical benefits for pain management.

■ The remaining issue is whether Marmon was totally disabled by her injuries from the bus accident. The Commission's award of total disability benefits was based on the assessment of Dr. Volarich, who testified that Marmon was 50% permanently disabled by the bus accident and 15% permanently disabled by her prior back injury.[3] The Commission also relied on James England's opinion that Marmon is unable to work given the pain associated with her physical disabilities. Although these expert opinions establish Marmon is permanently and totally disabled, they do not support a finding that the total disability resulted from the bus accident. The City can only be held responsible for benefits to the extent Marmon's disability is due to an injury sustained during her employment as a bus driver.

■ One of the purposes of the Second Injury Fund is "to relieve an employer or his insurer of liability for the previously

---

**3.** Dr. Volarich testified that Marmon did not report any symptoms to indicate a synergistic relationship between her pre-existing and current back injuries. Nonetheless, he conclud-

ed she currently has a 65% permanent partial disability, 15% of which is due to her "pre-existing difficulties."

**928**

disabled employee's total and permanent disability where that disability is not specifically attributable to an injury suffered during the period of employment with that employer." *E.W. v. Kansas City Mo. Sch. Dist.*, 89 S.W.3d 527, 538 (Mo.App. W.D. 2002), overruled on other grounds by *Hampton*, 121 S.W.3d 220. Based on the expert evidence found credible by the Commission, it is apparent that a portion of Marmon's total disability is unrelated to the bus accident and, therefore, is not attributable to the City. The Commission's determination that the City is exclusively liable for total disability benefits is unsupported by the Commission's factual findings. We reverse the award of permanent total disability benefits and remand to the Commission for consideration of whether the Second Injury Fund has proportionate responsibility.

CONCLUSION

The Commission's final award of future medical benefits for pain management is affirmed. The award of permanent total disability benefits is reversed and remanded consistent with the instructions provided herein.

All concur.