Gary D. Witt, Judge
In this consolidated appeal, Boone Electric Cooperative (“Boone Electric”) seeks review of two decisions of the Labor and Industrial Relations Commission (“Commission”). Boone Electric contends that the first decision, which awarded workers’ compensation benefits to Milton Young (“Young”) for a 2008 injury to his left knee, was erroneous because Young’s injury did not arise out of his employment. Boone Electric argues that the second decision, which awarded benefits to Young for a 2009 injury to his right shoulder, was erroneous because the incident was not a compensable accident under the Workers’ Compensation Law.[1] For reasons explained herein, we affirm the Commission’s awards for the two injuries.
FACTUAL AND PROCEDURAL HISTORY
Young began working as an electrical lineman for Boone Electric Cooperative in 1987. Young’s duties as a lineman included electrical wire installation and repair, both overhead and underground. In that capacity, Young’s work has included building and repairing power lines and running new electric services to homes and businesses. His job involves climbing poles, pulling and jacking wire in, and crimping it. Most of Young’s work is strenuous, and everything is done with arms reaching out and stretching, mostly shoulder high.

Knee Injury

On January 4, 2008, Young injured his left knee while working at a job site. Young was walking back to his work truck to retrieve materials when he stepped on a “frozen dirt clod” and his left knee “buckled and popped,” causing him to fall to the *787 ground. Young’s knee popped again when two other linemen on his crew helped him to his feet. As a result of the January 4, 2008 incident, Young sustained a sprain to his left knee.

Shoulder Injury

Young began his workday October 2, 2009 with a safety meeting. As part of that meeting, Young performed an exercise called a “pole rescue.” During that exercise, he climbed a utility pole by using a tool belt with a “safety,” cut loose a 180-pound dummy, lowered the dummy to the ground with a rope and hand line, and climbed back down. Young completed that exercise without incident or problem.[2]
Later that day, Young was running electric service to a building and needed to step up on a platform to access a 2,500-pound reel of wire on the truck. When the outriggers are down to stabilize the truck, as they were at that time, the step getting up into the truck is approximately twenty-seven inches off of the ground.[3] The step is so high because the trucks are never on level ground, and the outriggers are used to level and stabilize the truck so the bucket can be lifted properly to raise the worker up to where the lines are located on the pole. There are two handles designed to allow a person to pull up onto the step, and both are needed to keep balance. As Young was pulling himself up, he felt a “pop” in his right shoulder. After that, he could not raise his arm. Young’s doctor testified that the “pop” that Young heard was the sound of things tearing in his shoulder. As a result of the October 2, 2009 incident, Young sustained a right shoulder glenoid labral tear, partial biceps and subscapularis tears, and a full-thickness supraspinatus tear.[4]
On December 9, 2009, Young filed workers’ compensation claims against Boone Electric for both the January 4, 2008, and October 2, 2009, injuries.[5] Following a hearing, an Administrative Law Judge (“ALJ”) awarded benefits on both claims. Boone Electric appealed the ALJ’s decisions to the Commission. In supplemental opinions, the Commission affirmed the ALJ’s decision to award benefits on both of Young’s claims.[6] Boone Electric appeals the Commission’s decisions, which we have consolidated for review.[7]
Further facts are set forth below as necessary.
STANDARD OF REVIEW
This court will not disturb the decision of the Commission on appeal unless it acted without or beyond its power, the award *788 was procured by fraud, the facts do not support the award, or the award is not supported by sufficient competent evidence in the record. § 287.495.1.[8] “We examine the whole record to determine the sufficiency of the evidence.” Marmon v. City of Columbia, 129 S.W.3d 921, 924 (Mo.App.W.D.2004) (citation omitted). If we find the award is contrary to the overwhelming weight of the evidence, then it is not supported by substantial evidence and we must reverse, it. Id. In making this determination, “[w]e do not reweigh the evidence; the Commission is the judge of the weight to be given to conflicting evidence and the credibility of the witnesses.” DeLong v. Hampton Envelope Co., 149 S.W.3d 549, 554 (Mo.App.E.D.2004) (citations omitted).
However, “[t]he Commission’s interpretation and application of the law ... are not binding on this court and fall within our realm of independent review and correction.” Snyder v. Consol. Library Dist. No. 3, 306 S.W.3d 133, 136 (Mo.App.W.D.2010) (citation omitted). We thus review the questions of law presented in this appeal de novo.
POINT I
In its first point, Boone Electric contends that the Commission erred in awarding Young benefits for his 2008 knee injury because Young failed to prove that the accident arose out of his employment.
Under the Missouri Workers’ Compensation Law (“Act”), an employer “shall be liable, irrespective of negligence, to furnish compensation under the provisions of [the Act] for personal injury ... -of the employee by accident ... arising out of and in the course of the employee’s employment.” § 287.120.1.
Section 287.020.3(2) governs whether an injury arises out of and in the course of employment, and states:
(2) An injury shall be deemed to arise out of and in the course of the employment only if:
(a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and
(b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.
In the present case, Boone Electric does not challenge the Commission’s finding that the 2008 accident was the prevailing factor in causing Young’s knee injury. Rather, Boone Electric confines its argument under Point I to the application of Section 287.020.3(2)(b). Boone Electric argues that Young failed to prove that the risk from which his injury arose — slipping on a frozen clod of dirt — was related to his employment. In support of its argument, Boone Electric cites two recent decisions in which injuries were held not to have arisen out of the claimants’ employment.
First, in Miller v. Missouri Highway & Transportation, 287 S.W.3d 671 (Mo. banc 2009), the claimant was walking on a work site “when he felt a pop and his knee began to hurt.” Id. at 672. “He frankly admitted] ... that nothing about the road, swface ... caused any slip, strain or unusual movement.... ” Id. (emphasis added). On appeal, our Supreme-Court made it clear that, under the 2005 amendments to the Act: “An injury will not be deemed *789 to arise out of employment if it merely happened to occur while working but work was not a prevailing factor and the risk involved — here, walking — is one to which the worker would have been exposed equally in normal non-employment life.” Id. at 674. Thus, in affirming the Commission’s denial of benefits, the Court held that the claimant’s injury did not arise out of employment because it did not occur “due to being in an unsafe location due to his employment.” Id. Rather, the claimant was “walking on an even road surface when his knee happened to pop.” Id.; see also Pope v. Gateway to W. Harley Davidson, 404 S.W.3d 315, 320 (Mo.App.E.D.2012) (“In Miller, the employee was simply walking on an even road when his own physiology caused his knee to pop. There was no evidence that anything about his work increased his risk of his knee popping.”).
Second, in Johme v. St. John’s Mercy Healthcare, 366 S.W.3d 504 (Mo. banc 2012), the claimant was making a pot of coffee in the break room of her workplace when she turned and fell off the side of her sandal, injuring her right hip. Id. at 506. “There were no irregularities or hazards on the kitchen floor. The floor was not wet, and there was not any trash on the floor.” Id.. Therefore, because the only connection between the claimant’s injury and her employment was the fact that the injury “occurred in her office’s kitchen,” our Supreme Court held that the claimant’s injury did not arise out of her employment. Id. at 511-12.
“Together, Miller and Johme stand for the proposition that an unexplained injury is not compensable merely because the injury occurred at work.” Dorris v. Stoddard, Cnty., 436 S.W.3d 586, 592 (Mo.App.S.D.2014). “[W]e consider whether [the claimant] was injured because he was at work as opposed to becoming injured merely ivhile he was at work.” Pope, 404 S.W.3d at 320. Thus, because we find that Young was injured because he was at work, Boone Electric’s reliance on Miller and Johme is misplaced.
In Duever v. All Outdoors, Inc., 371 S.W.3d 863 (Mo.App.E.D.2012), a case squarely on point, but not cited by either party, the claimant was the owner and operator of a landscaping company. Id. at 865. The claimant was injured when he slipped on a piece of ice in the parking lot of his office on his way back inside after holding a safety demonstration in the lot. Id. In affirming the Commission’s award of benefits, this Court stated that the facts before it were “clearly distinguishable” from those in Miller and Johme because the claimant “sustained an injury due to an unsafe condition (the ice itself),” the claimant was in the icy parking lot “as a function of his employment,” and, therefore, the claimant was exposed to the risk of slipping on the ice because of his employment. Id. at 867-68.
Here, as in Duever, there was evidence that Young’s injury was caused by an unsafe condition on the ground of the work site — the frozen dirt clod. Moreover, Young was at the work site because of his employment and, therefore, was exposed to the risk of slipping on the frozen dirt clod because of his employment. Accordingly, the risk from which Young’s injury arose was related to his employment.
Boone Electric also asserts that Young’s injury did not arise out of his employment because he lives on a farm and, thus, was “equally exposed to clods of dirt” in his nonemployment life. However, as recently explained in Donis, under the Act’s strict construction, Section 287.020.3(2)(b)’s “hazard or risk” cannot be identified so generally. In Dorns, the claimant was injured when she tripped on a crack in the street while walking back to *790 her office after completing a work-related task offsite. Id. at 588. On appeal, the employer argued that the Commission erred in awarding benefits because the claimant was equally exposed to the risk of cracks in a street in her nonemployment life. Id. at 590. Rejecting the employer’s argument, this Court first stated that, by dismissing a similar argument in Duever, we “implicitly determined the hazard was not the hazard of slipping on ice in general, but the hazard of slipping on that ice in that particular parking lot.” Id. at 592. Thus, identifying the “specific risk or hazard” the claimant was exposed to as “cracks in [the] particular street” she tripped on, and finding that “[tjhere [was] no evidence in the record that [the] [claimant had any exposure to [t]hat particular hazard during her nonemployment life,” the Dorris Court held that “the record could not support a conclusion by the Commission that [the claimant] was equally exposed to that hazard in her nonem-ployment life, as urged by employer.” Id.
Similarly, here, even assuming arguendo■ that Young was exposed to the hazard of slipping on frozen dirt clods in his noriemployment life, his injury still arose out of his employment because there is nothing in the record to support a conclusion that he was equally exposed to the hazard of slipping on frozen dirt clods at that particular work site in his nonemployment life.[9]
For all the reasons stated above, Young’s injury arose out of and in the course of his employment. Accordingly, the Commission did not err in awarding Young benefits, for his 2008 knee injury.
This point is denied.
POINT II
In its second point, Boone Electric contends that the Commission erred in awarding Young benefits for his 2009 shoulder injury because Young failed to prove that an accident in fact occurred. The question is whether Young suffered an “accident” as defined in Section 287.020.2. Understanding why we affirm the Commission on this point entails application of the statutory definition of “accident,” created by the 2005 amendment to the Act, to the facts surrounding Young’s shoulder injury.

*791
The Legislature expressly rejected and abrogated all earlier case law interpretations on the meaning of or definition of “accident”

In this issue of first impression, we begin by noting that, as part of the 2005 amendments, the Legislature expressly stated its “intent to reject and abrogate earlier case law interpretations on the meaning of or definition of ‘accident’ ... to include, but not be limited to, holdings in Bennett v. Columbia Health Care, 80 S.W.Bd 524 (Mo.App.W.D.2002) ... and all cases citing, interpreting, applying, or following [that] case[ ].” § 287.020.10 (emphasis added).
Because interpretation of the term “accident” as used in the amended statute is an issue of first impression[10] and because the Legislature abrogated all earlier case law interpretations of the term “accident,” we are without decisive precedent on which to rely on this matter.

General Principles of Statutory Interpretation

The “primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning.” In re Boland, 155 S.W.3d 65, 67 (Mo. banc 2005) (citation omitted). “If statutory language is not defined expressly, it is given its plain and ordinary meaning, as typically found in the dictionary.” Derousse v. State Farm Mut. Auto. Ins. Co., 298 S.W.2d 891, 895 (Mo. banc 2009) (citation omitted). We presume “every word, sentence or clause in a statute has effect, and the legislature did not insert superfluous language.” Bateman v. Rinehart, 391 S.W.3d 441, 446 (Mo. banc 2013) (citation omitted). When the words of a statute are clear, “there is nothing to construe beyond applying the plain meaning of the law.” State ex rel. Valentine v. Orr, 366 S.W.3d 534, 540 (Mo. banc 2012) (citation omitted). We “ “will look beyond the plain meaning of the statute only when the language is ambiguous or would lead to an absurd or illogical result.’ ” In re DeBrodie, 400 S.W.3d 881, 884 (Mo.App.W.D.2013) (emphasis added; citations omitted). “A statute is ambiguous when its plain language does not answer the current dispute as to its meaning.” Id. (citation omitted). ‘We presume the legislature intended what the statute says, and if the statutory language is clear, ‘there is no room for construction beyond the plain meaning of the law.’ ” Treasurer of State v. Stiers, 388 S.W.3d 217, 219 (Mo.App.W.D.2012) (citation omitted).
Put another way, “[p]roper statutory construction starts with the words of the statute.” In re M.D.R., 124 S.W.3d 469, 472 (Mo. banc 2004). “In most cases, it ends there, as well.” Id. “If the words of the statute are unclear or ambiguous, the Court may review the earlier versions of the law, or examine the whole act to discern its evident purpose, or consider the problem that the statute was enacted to remedy.” Id. (emphases added; citation omitted).

Under the Act’s plain language, Young’s workplace injury constitutes an “accident”

As noted above, an employer is “liable, irrespective of negligence, to furnish com *792 pensation under the provisions of [the Act] for personal injury ... of the employee by accident ... arising out of and in the course of the employee’s employment.” § 287.120.1. Section 287.020.2 defines “accident” as “an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. ...” We are asked to decide whether Young suffered “an unexpected traumatic event or unusual strain.”
In so doing, we note that in addition to general principles of statutory interpretation, the Legislature’s 2005 amendments mandate that we construe the Workers’ Compensation law strictly. § 287.800.1. “Strict construction of a statute presumes nothing that is not expressed.” Robinson v. Hooker, 323 S.W.3d 418, 423 (Mo.App.W.D.2010) (citation omitted). “The rule of strict construction does not mean that the statute shall be construed in a narrow or stingy manner, but it means that everything shall be excluded from its operation which does not clearly come within the scope of the language used.” Allcorn v. Tap Enters., Inc., 277 S.W.3d 823, 828 (Mo.App.S.D.2009) (citing 82 C.J.S. Statutes § 376 (1999)). “The clear, plain, obvious or natural import of the language should be used, and the statutes should not be applied to situations or parties not fairly or clearly within its provisions.” Id. (quoting 3 Sutherland Statutory Construction § 58:2 (6th ed.2008)).
The Commission’s findings are in accordance with a plain reading of the relevant statutory’language:
As will be seen in more detail below in , our discussion of the issue of medical causation, the “pop” was not the injury itself, but rather merely a tangible manifestation to employee of a problem inside his shoulder. We are convinced that the employee suffered an accident, because despite the fact employee had pulled himself up onto the truck many times before, this time he felt a pop in his shoulder, and this time he was unable to lift his arm afterward. We believe that these facts constitute the “unexpected traumatic event or unusual strain” required under the law. We conclude that' employee suffered an accident for purposes of § 287.020.2.
The words “unexpected traumatic event or unusual strain” are clear and unambiguous. As noted above, it is a cardinal rule of statutory construction that we afford words not defined by the Legislature then-plain and commonly understood meaning— often a meaning found in the dictionary. Derousse, 298 S.W.3d at 895. It is also a cardinal rule of statutory construction that we presume the Legislature does not employ superfluous or meaningless language. Bateman, 391 S.W.3d at 446. This point is pai*ticularly evident in this case because of the Legislature’s edict that the courts shall not look to prior court opinions interpreting this statute, but focus instead on the words they used. § 287.020.10.
Taken apart, the beginning of the definition of “accident” describes two categories: (1) “unexpected traumatic event,” or (2) “unusual strain.” [11] Neither phrase is defined in the statute. In arriving at their intended definitions, we are required to presume that the phrases are not redundant, and have distinct meanings. Id. (holding that we presume “every word, sentence or clause in a statute has effect, *793 and the legislature did not insert superfluous language”). In other words, “unusual strain” is not synonymous with, or redundant of, “unexpected traumatic event.” Rather, “unusual strain” is a category unto itself, distinguishable from “unexpected traumatic event.” Nonetheless, it is possible that a particular “strain” or “event” could fall within both categories; it is com-pensable if it falls under a single category. Williams v. Dir. of Revenue, 446 S.W.3d 272, 273 (Mo.App.E.D.2014) (statute that defined “vehicle” as “designed primarily for use, or is used on highways” encompasses both a car which is designed for use on a highway, whether it was on a highway or not, as well as a golf cart, which was not designed for use on the highway, but was in fact used on a highway).
Because we find that Young’s shoulder injury fits within the category of “unusual strain,” we do not have to reach the issue of whether it likewise fits within the category of an “unexpected traumatic event.”
With this starting point, we turn to the dictionary to locate common meanings:
“Unexpected”: “Unforeseen.” Webster’s Third New International Dictionary (1993, Unabridged) at 2494.
“Traumatic”: “Of, relating to, or resulting from a trauma.” “Trauma” is defined as: “1: an injury or wound to a living body caused by the application of external force or violence < injuries ... such as sprains, bruises, fractures, dislocation, concussion — indeed trau-mata of all kinds — Laneet>”.] “2 a: a psychological or emotional stress or blow that may produce disordered feelings or behavior”; “[2] b: the state or condition of mental or emotional shock produced by such a stress or by a physical injury.” Id. at 2432.[12]
“Event”: “Something that happens.” Id. at 788.
“Unusual”: “Being out of the ordinary.” Id,, at 2514.
“Strain”: “2 a: to exert (as oneself) to the utmost: put great stress or effort: use or cause to function with extreme vigor ... b: to injure (as oneself or a body part) by overuse or misuse” (when used as a verb). “An act of straining or the condition of being strained: as 1 a: excessive physical or mental tension ... b: excessive or difficult exertion or labor: a violent or overtaxing effort c: A hurt or injury of a body part or organ resulting or such as results from excessive tension, effort or use” (when used as a noun, as is the case here). Id. at 2255.
Employing these common meanings, an “accident” requires either: (1) an unforeseen happening relating to or resulting from a physical wound [“unexpected traumatic event”], or (2) an unordinary act of excessive physical or mental tension, difficult exertion, or a violent or overtaxing effort [“unusual strain”].
Applying the second plain meaning of “accident,” it is evident that in pulling his weight up as high as twenty-seven inches, Young plainly sustained an act of excessive physical tension — that is to say, Young suffered an “unusual strain.” The varying nature of the ground and the necessity of having the truck stable and level result in this unavoidably high step— roughly the equivalent of stepping onto a standard-height desk or kitchen table in one movement — such that Young had to use two handles and careful balance to pull up the weight of his entire body and any *794 tools in his belt. In the course of this action, Young suffered an “unusual strain” so as to meet Section 287.020.2’s definition of “accident.” The Commission correctly recognized this: “the employee suffered an accident, because despite the fact employee had pulled himself up onto the truck many times before, this time he felt a pop in his shoulder, and this time he was unable to lift his arm afterward.”

Young did not need to establish an external cause of his injury

In our holding, we reject Boone Electric’s argument that Young did not establish that his accident was caused by an “unexpected traumatic event” or an “usual strain.” Boone Electric argues that Young “was merely getting into the truck as he had done many times before when he heard the pop. [Young] getting into his truck was a routine procedure and there is no evidence that there was any trauma or duress associated with him entering the truck.” In essence, Boone Electric argues that this could not be an “unexpected traumatic event or unusual strain” because Young had to take the same actions every time he entered his truck when the outriggers were in use. However, repeated unusual strain does not make it usual; it merely makes it repeated.
Once a claimant has established an “unexpected traumatic event” or an “unusual strain,” the balance of the statutory definition of “accident” requires proof of the following additional criteria: (1) the “accident” must be identifiable by time and place of occurrence; (2) the “accident” must produce at the time objective symptoms of an injury; and (3) the “accident” must be caused by a specific event during a single work shift. § 287.020.2.
Boone Electric does not contest that Young’s injury was identifiable by time and place of occurrence, and that it produced at the time objective symptoms of an injury. Nor does Boone Electric contest that the injury occurred during a single work shift. The only portion of the statute that Boone Electric’s argument implicates is the term “caused by a specific event.” Although its argument is not fully developed, Boone Electric appears to contend that the Act’s definition of “accident” requires something distinguishable from and in addition to routine work, such as a precursor event (e.g. a rabid dog on the chase)[13] or an external force (e.g. a slip and fall). But succeeding in that argument requires reliance on case law that was either specifically abrogated by the 2005 amendments to the Act or case law that interpreted a completely different provision of the Act addressing hernia injuries. More to the point, the argument unnecessarily contorts and disregards the plain meaning of the phrase as it is currently enacted in this statute.[14]
*795 Again employing the dictionary, “specific” means “3: restricted by nature to a particular individual, situation, relation, or effect: PECULIAR.” WEBSTER’S at 2187. “Event,” as noted, means “something that happens.” Id. at 788. In application, this plain meaning, coupled with the plain meaning of “unexpected traumatic event,” or “unusual strain,” requires proof of the following to establish an “accident” pursuant to Section 287.020.2:
In the case of an “unexpected traumatic event”:
an unforeseen happening relating to or resulting from a phgsical wound [unexpected traumatic event], identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a particular happening [specific event] during a single work shift.
In the case of an “unusual strain”: an unordinarg act of excessive phgsical or mental tension, difficult exertion, or a violent or overtaxing effort [unusual strain], identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a particular happening [specific event] during a single work shift.
In the case of an “unexpected traumatic event,” the traumatic event leading to injury will be the “particular happening,” or “specific event” to which the injury can be plainly connected. In the case of an “unusual strain,” the “particular happening” linked to the injury need not be traumatic, or accidental, but need only be identifiable: a “particular happening.” *796 In either case; the requirement of a “specific event” operates to preclude recovery for complaints or injuries that cannot be isolated to a “particular happening” or “specific event.” Rather, from the context of the statute, it is evident that the Legislature employed the term “specific event” to clarify that an “accident” must occur “during a single work shift,” a phrase necessary to exclude, e.g., injuries caused by occupational diseases acquired over time, including injuries that result from the repetitive routine performance of work, which are addressed separately in Section 287.067. Amesquita v. Gilster-Mary Lee Carp., 408 S.W.3d 293, 301 (Mo.App.E.D. 2013). To reiterate, repeated unusual strain does not make it usual; it only makes it repeated.[15]
*797 In application, the “specific event” requirement, afforded its plain meaning, couples with the separate requirement that an “accident” be identifiable by time and place of occurrence to require proof of a temporal (time), geographic (place), and causal (specific event) relationship to the injury. In Young’s case, the particular happening was the act of grabbing the truck handles to hoist himself up onto a raised step or platform. This is consistent with the Legislature’s motivation to ensure that “accidents” include only those injuries directly connected to the work. Because of the “specific event” provision, we reject any contention that the statute operates to narrow the intended meaning of “unusual strain” to require proof that an external, accidental force caused the injury.[16]

*798
Public policy supports our interpretation

Our holding is further supported by the longstanding . public policy behind the Workers’ Compensation Law. Courts have long held that “[t]he purpose is to provide a simple and nontechnical method of compensation for injuries sustained by employees through accident arising out of and in the course of employment and to place the burden of such losses on industry” Bethel v. Sunlight Janitor Serv., 551 S.W.2d 616, 618 (Mo. banc 1977) (emphasis added). “Innumerable decisions indicate that the law is intended to enable an injured employee to recover compensation and to do away with the common law defenses and disabilities.” Id. Under Boone Electric’s rationale, Young would prevail had he been negligent in not taking care to balance himself and thus slipped causing his injury, yet he could not recover where he took the action of properly balancing himself in what necessarily is an awkward and dangerous motion that his employment forced him to endure. This result would be unreasonable and absurd. Just as a broken piece of equipment, an unbalanced body, or a rabid dog on the chase might play a role in a claimant’s accident, so too can simple use — even careful, proper use— of equipment such as this, result in an accident. In the words of the Commission, “the employee suffered an accident, because despite the fact employee had pulled himself up onto the truck many times before, this time he felt a pop in his shoulder, and this time he was unable to lift his arm afterward.” Simply put, the definition of “accident” does not require examination of these surrounding circumstances for a cause.
This point is denied.
Conclusion
The Commission’s awards as to both injuries are affirmed. •
Joseph M. Ellis, Victor C. Howard, Thomas H. Newton, James E. Welsh, Mark D. Pfeiffer, Karen King Mitchell, Cynthia L. Martin, Anthony Rex Gabbert, Judges, Concur in the Majority Opinion
Chief Judge Alok Ahuja concurs in part and dissents in part in separate opinion, joined by Judge Lisa White Hardwick

. Section 287.010 provides that Chapter 287 shall be known as th& “Workers’ Compensation Law.”

. At the time of his shoulder injury in 2009, Young was approximately age 53. Prior to October 2, 2009, Young had only occasional pain or soreness in his shoulders and had never received any medical treatment for that soreness. X-rays on both shoulders taken in 2004, the only occasion where x-rays were taken prior to the incident at bar, were interpreted as “unremarkable.”

. By way of visualization, a standard step is approximately eight inches high, and a standard desk is approximately thirty inches tall.

. . Boone Electric presented the testimony of two doctors whose testimony the Commission deemed not credible.

. Young also filed claims against the Second Injury Fund, but those claims are not relevant to the instant appeal.

. The Commission modified the ALJ's award for Young’s 2009 injury by reducing the amount from 35 percent permanent partial disability at the right shoulder to 30 percent permanent partial disability at the right shoulder. Young does not challenge that reduction on appeal.

. Young filed a Motion for Attorney Fees pursuant to Rule 84.19, arguing Boone Electric’s appeal is frivolous. Young’s motion, which was taken with the case, is hereby denied.

. All statutory references are to RSMo 2000 as currently supplemented, which encompasses several amendments from 2005 that apply to this case. Some sections were subsequently amended, but those amendments are not germane to our analysis herein.

. In its final award allowing compensation for the 2008 injury, the Commission stated:
[W]e ask whether the record contained evidence sufficient to warrant a finding that employee was equally exposed to the risk of stepping on a frozen dirt clod and falling in his normal nonemployment life. Employer fails to identify such evidence in its brief....
Boone Electric argues that, by stating that “[e]mployer fails to identify such evidence,” the Commission "improperly placed the burden upon [Boone Electric in its equal exposure analysis].” We disagree.
A claimant is not required to prove both that the hazard from which her injury arose was related to her employment and that the hazard was one which she was not equally exposed to in her nonemployment life. Rather, the claimant has the burden of proving that her injury “was caused by [a] risk related to her employment activity as opposed to a risk to which she was equally exposed in her 'normal nonemployment life.’ ” Johme, 366 S.W.3d at 512 (emphasis added). Meaning, implicit in a finding that the claimant was exposed to. the risk from which her injury arose because of her employment, is a finding that the claimant could have avoided the risk outside of her employment.
Here, Young established that his injury arose from the hazard of slipping on the frozen dirt clod, and because Young's employment exposed him to that hazard, he proved that the hazard was related to his employment. Thus, by stating that Boone Electric failed to identify any evidence of equal exposure, the Commission did not place the burden on Boone Electric to prove that Young’s injury arose out of his employment. Instead, the Commission was merely stating that Boone Electric failed to point to any evidence tending to disprove the prima facie case already made by Young.

. The issue of statutory interpretation of the meaning of the term "accident” is not raised in the Point Relied On. This court would be within its discretion to deem the point abandoned and dismiss this point on appeal. Lan-ham v. Div. of Employment Sec., 340 S.W.3d 324, 327 (Mo.App.W.D.2011). Because we prefer to decide cases on the merits and despite the deficiencies we are able to ascertain the arguments from the briefs, we proceed to the merits. Randolph Co. v. Moore-Ransdell, 446 S.W.3d 699, 704 n. 3 (Mo.App.W.D.2014).

. The use of the word "or” constitutes a disjunctive meaning; if an event falls under either category, this is sufficient to constitute an “accident” under the statute. See Renner v. Dir. of Revenue, 288 S.W.3d 763, 766 (Mo. App.E.D.2009).

. While this dictionary definition includes descriptions of mental injuries, the Legislature has placed additional restrictions on the application the Workers' Compensation Law to mental injuries in sections 287.120.8 and 287.120.9.

. Appellants argue in their brief that an example of an “unexpected traumatic event” would be an employee who injured his shoulder while rushing to get into a truck because he was being chased by a rabid dog.

. The Dissent marches the reader through a long line of precedent studiously tracing the history of Missouri's workers’ compensation cases since its 1929 inception in an effort to establish that Young’s injury does not fit within the meaning of an "unusual strain.” This is a curious exercise as there is no meaningful assertion by the parties that the words of the statute as written or as applied to these facts are unclear or ambiguous. As noted above, "[w]e presume the legislature intended what the statute says, and if the statutory language is clear, 'there is no room for construction beyond the plain meaning of the law.’ " Sti-ers, 388 S.W.3d at 219. The Dissent cites a treatise in support of its contention that the term "unusual strain” has been interpreted differently in different jurisdictions and thus is ambiguous. Dissent at n. 5. A treatise is no substitute for careful examination of the actual language enacted by our Legislature. *795 Thus, the Dissent’s painstaking research jumps past our first obligation, to interpret the statute as written.
The Dissent’s research can be separated into four rough categories. The beginning demarcation of the research is what the Dissent describes as a liberal interpretation of an early version of the Act, rejected by State ex rel. Hussman-Ligonier Co. v. Hughes, 348 Mo. 319, 153 S.W.2d 40 (1941), separated by forty years by. Wolfgeher v. Wagner Cartage Service, Inc., 646 S.W.2d 781 (Mo. banc 1983), and capped off by Bennett v. Columbia Health Care, 80 S.W.3d 524 (Mo.App.W.D.2002), which the Legislature specifically abrogated in 2005.
The Dissent attempts to show that that it is "obvious” the Legislature employed the term “unusual strain” to "restore" or "resurrect” the second of the four periods, or what it terms the "pre-Wolfgeher ” line of cases. Dissent at 799, 805-06. In so doing, the Dissent notes accurately that "[wjhen the legislature enacts a statute referring to terms that have had other judicial or legislative meaning attached to them, the legislature is presumed to have acted with knowledge of that judicial or legislative action.” Dissent at 801 (quoting Balloons Over the Rainbow, Inc. v. Dir. of Revenue, 427 S.W.3d 815, 825-26 (Mo. banc 2014) (additional citations omitted)). And this holding from Balloons forms the platform of the Dissent’s lengthy analysis.
Neither the number of cases cited by the Dissent nor the presumption noted in Balloons overcomes the Legislature’s 2005 language explicitly requiring us to reject and abrogate earlier judicial interpretations on the meaning of or definition of "accident,” including but not limited to Bennett. There is no qualifying language on the blanket abrogation of prior judicial precedent, nor is there any language directing us to the "pre-WoZf-geher ” line of analysis. Notably, the Legislature did not abrogate the Wolfgeher case in particular. If the Legislature had desired to refer us to the pr e-Wolfgeher line of reasoning or to any other case or line of cases in particular, the Legislature is well aware of how to do so. In fact, this very statute clearly shows that the Legislature knows exactly how to direct the courts to a particular case or line of cases.
The Legislature did not direct us to restore an unidentified line of cases; the Legislature instead directed us not to resort to prior interpretations and to determine the plain meaning of the words of the statute. To hold differently would be a judicial choice to disregard the plain language of the 2005 amendments abrogating all earlier case law interpreting the meaning of the word "accident."

. Again, we take stock of the Dissent’s arguments that the Commission should be reversed on this point because the accident must cause the injury. The Dissent posits that separate, arguably similar provisions from other sections of the Act support reversal, including the hernia statute and a section relating to mental stress. Understanding why the Dissent’s argument is misplaced on this point is evident in examining McClain v. Yellow Cab Co., 439 S.W.2d 200 (Mo.App. 1969), a case the Dissent relies on that interprets the Act’s hernia provision. In McClain, the Southern District of our court determined that the fact of a hernia was not, in and of itself, proof of a workplace strain under the hernia statute. Id. at 205. The McClain court reached its conclusion in reliance on analysis “in other types of worker's compensation cases” that at the time were deciding that for an "unusual strain” to qualify as an “accident,” the "usual strain” had to involve an accidental or external force outside the routine performance of one’s work. Id. at 205. As McClain was decided in 1969, the "other” cases referred to would have been the pre-Wolfgeher line of cases. Additionally, McClain's reliance on "other types of worker’s compensation cases” to define the phrase "unusual strain” as used in Section 287.195 was plainly erroneous. That statute requires a hernia claimant to demonstrate that his or her hernia resulted from "an accident or unusual strain.” The use of the disjunctive "or” expressed legislative intent to create two distinct circumstances that could result in a hernia — an "accident” or an "unusual strain.” The McClain court disregarded this fact. Instead, it effectively equated the terms "accident” and "unusual strain” when it looked to "other types of worker’s compensation cases” that had attempted to figure out when and whether an "unusual strain” could fit within the statutory definition of "accident.” McClain thus mistakenly relied on cases discussing whether “unusual strains” fell within the statutory definition of "accident” to define "unusual strain.”
Additionally, as to the hernia statute, other cases have held that the "unexpected or abnormal strain usually results from the performance of work in an abnormal manner or in a manner not routine, but this is not necessarily so.” Pattengill v. Gen. Motors Corp., 845 S.W.2d 630, 632 (Mo.App.E.D. 1992) (overruled on other grounds) (citing Wolfgeher, 646 S.W.2d at 783). "Abnormal strain may also result from the lifting of heavy objects while in an awkward or unbalanced posture where the worker is subjected to stress of unforeseen force or duration.” Id. In Pattengill, the Eastern District determined that a claimant had suffered an “unusual strain” where he had extended his arms above his head and stretched as far as he could reach, causing injury. "In determining whether an unusual strain occurred, we must focus ‘on the fact that the injury has occurred rather than what act or force immediately preceded the injury.’ ” Pattengill, 845 S.W.2d at 632 (citations omitted). As an aside, we note that the Dissent recognizes Pattengill in stating that Section 287.195 "has been interpreted consistently with the pre-Wolfgeher case law.” But Pattengill expressly relied on Wolfgeher, as this larger excerpt indicates:
"[A]n unusual or abnormal strain may be classified as an accident even though not preceded by a slip and fall. The unexpected or abnormal strain usually results from the performance of work in an abnormal manner or in a manner not routine, but this is not necessarily so. Abnormal strain may also result from the lifting of heavy objects while in an awkward or unbalanced posture where the worker is subjected to stress of unforeseen force or duration.” Wolfgeher v. Wagner Cartage Seivice, Inc., 646 S.W.2d 781, 783 (Mo. banc 1983); accord Alexander v. Pin Oaks Nursing Home, 625 S.W.2d 192, 193 (Mo.App.l981)[("The law treats an ab *797 normal strain as an accident and the resultant violence to the body as an injury within § 287.020. Work done in an awkward or unbalanced position, albeit in the execution of a regular assignment, which causes the employee to undergo a stress exceeding the usual and begets an unanticipated strain, results in a compensable injury.”) ]. Merriment v. Ben Gutman Truck Sewice, Inc., 392 S.W.2d 292, 297 (Mo. 1965) [(‘‘An abnormal strain may, therefore, be classified as an accident even though not preceded or accompanied by a slip or a fall”; "The abnormal strain is the event and the injury is the result. The unexpectedness lies in the fact that force produces more strain than the employee has contemplated. This is true even though the force which caused the abnormal strain comes entirely from the physical exertion rather than from sources external to the body.”]. In determining whether an unusual strain occurred, we must focus "on-the fact that the injury has occurred rather than what act or force immediately preceded the injury.” Viola v. Custom Coatings, Inc., 664 S.W.2d 266 (Mo. App.1984) quoting Wolfgeher, 646 S.W.2d at 267 [784-85],
Pattengill, 845 S.W.2d at 632. Not only did the Pattengill court rely on Wolfgeher, it also provided no definitive language for the Dissent's assertion that we must interpret this statute in comparison to the claimant's normal routine work activities. In actuality, Pat-tengill’s facts are analogous to those in the case at bar in every relevant way, and its holding is in line with our opinion. Pattengill dispenses of the argument that there must be some sort of external cause or force preceding the injury in order for a claimant to recover by emphasizing that our focus is on the fact that the injury occurred rather than what preceded the injuiy. • 845 S.W.2d at 632 (citing Viola, 664 S.W.2d at 267) (where claimant had sat in similar positions before in his job and testified that "nothing struck his leg nor did he hit it in any way at the time he was injured” nor did he "trip or fall over anything,” the court held that "[t]he simple act of getting up from an awkward position was the medical cause of the tear to claimant's right medial meniscus.”).
Regardless of the varying prior judicial interpretations of the hernia statute, there is a further compelling reason to look anew at the language the Legislature employed in its 2005 amendments rather than reflecting on inappo-site statutes: “A phrase used more than once in a statutory scheme may have different meanings depending on the context in which it is used.” Dungan v. Fuqua Homes, Inc., 437 S.W.3d 807, 813-14 (Mo.App.W.D.2014) (citation omitted). "It is not logical or necessarily inferable that the same words used elsewhere [in a statutory scheme] are used interchangeably with exactly the same intent....” Id. (citation omitted). "Statutory construction must be made on the basis of the wording in the context in which it occurs.” Id. (citation omitted). Pattengill emphasizes just how dangerous it is to transplant case law surrounding the usage of a term in one statute into another statute, and in any event, that case simply does not support the Dissent’s rationale.
We are not persuaded that the Legislature’s 2005 amendment's use of the term "unusual strain” was intended to direct us to prior select interpretations of the hernia provision (or of Section 287.120.8), particularly without any such indication from the Legislature. It is clear from the language in the 2005 amendments that directs us to the statutory interpretation of particular case law, that if the Legislature had intended for us to use a particular statutory interpretation from a particular pri- or case, it is well aware of how to do so.

. For the reasons set forth in this opinion, there is no indication in the statute that an injury must be "preceded” by an event. Ad-
*798 ditionally, we disagree with the Dissent's note 3 that " ‘a traumatic event' would appear to require ‘the application of external force or violence' to the body” and "[n]o such 'external force or violence’ was involved in Young's shoulder injury” is unsupported by the language of the statute. The Legislature used the word flagged by the Dissent in its adjective form: an "unexpected traumatic event” is an accident. Regardless of the fact that the adjective is defined by reference to the noun in Webster’s, the Legislature did not employ the noun form of "trauma,” so as to require that an accident must be caused by trauma or follow trauma. Rather, the statute reads simply that "an accident as used in this chapter • shall mean an unexpected traumatic event or unusual strain....”