**In the Matter of Carl Lee DeBRODIE, an Incapacitated and Disabled Adult, Respondent;**

**Karen Digh Allen, Callaway County Public Administrator/Guardian and Conservator for Carl Lee DeBrodie, Respondent,**

v.

**Bryan Keith Martin and Mary Elizabeth Martin, Appellants.**

**No. WD 75853.**

Missouri Court of Appeals, Western District.

June 18, 2013.

---

Daniel R. Dunham, Columbia, MO, for appellant.

Mary W. Beck and Elizabeth K. Magee, Columbia, MO, for respondent.

Before Division Three: JOSEPH M. ELLIS, Presiding Judge, LISA WHITE HARDWICK and CYNTHIA L. MARTIN, Judges.

LISA WHITE HARDWICK, District Judge.

Bryan Keith Martin and Mary Elizabeth Martin ("the Martins") appeal the judgment denying their petition to adopt Carl Lee DeBrodie, an incapacitated and disabled adult. The Martins contend the circuit court erred in finding that, because DeBrodie was not capable of consenting to the adoption and his legal guardian refused to provide her consent, the court could not consider the fitness and propriety of the proposed adult adoption. For reasons explained herein, we reverse and remand the case to the circuit court for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

In September 1999, the Cole County Circuit Court appointed Mary Martin to be the legal guardian of DeBrodie, who was then thirteen years old and considered as a special needs child. In the guardianship judgment, the court found that DeBrodie's biological mother was "severely intellectually, psychologically, socially, and occupationally impaired" and that both she and DeBrodie's biological father were unable or unfit to assume the duties of guardianship.[1] Mary Martin continued to serve as DeBrodie's legal guardian until he turned eighteen. At some point after that time, the Callaway County Circuit Court adjudged DeBrodie as an incapacitated and disabled adult. DeBrodie became a ward of the Public Administrator of Callaway County, with Karen Digh Allen ("Legal Guardian") appointed as his legal guardian and conservator.

In August 2011, the Martins filed a petition to adopt DeBrodie when he was twenty-five years old. The petition was filed in

the Circuit Court of Cole County, Juvenile Division. In their adoption petition, the Martins alleged that, after Mary Martin's guardianship was terminated, they continued to provide DeBrodie care and support. They further alleged that they had developed a "close familial relationship" with DeBrodie that was important to his welfare and they wanted to establish a legal familial relationship by adopting him.

The Martins acknowledged that DeBrodie was presumed to be incompetent to consent to the adoption due to his having been adjudicated incapacitated and disabled. However, they asserted that, if the court were to determine that he was competent to consent, he would consent to their adopting him. If the court found that DeBrodie was incompetent to consent, the Martins alleged that neither his consent nor Legal Guardian's consent would be necessary to grant the adoption.

Legal Guardian filed an objection to the Martins' adoption petition and asked the court to appoint a guardian ad litem to represent DeBrodie's interests. The court appointed a guardian ad litem for DeBrodie. The guardian ad litem performed an investigation and recommended that the court grant the Martins' adoption petition.

Following an evidentiary hearing, the court entered its judgment denying the Martins' adoption petition. In the judgment, the court found that, because DeBrodie was an adult, his consent to the adoption was required. The court also found, however, that DeBrodie was legally incapacitated and could not give his own consent. Moreover, the court found that there was no credible evidence to support a finding that DeBrodie understood the

---

1. In the guardianship judgment, the court found that grounds existed to terminate the parental rights of DeBrodie's mother to De- Brodie and his younger sister, but the court decided that termination would not be in the children's best interest.

legal significance of a decision to consent to adoption.

The court noted that the probate court had not authorized Legal Guardian to give consent to the adoption and that Legal Guardian had declined to seek the probate court's authority to consent. Although the court considered the guardian ad litem's recommendation, the court found that there was no authority for disregarding Legal Guardian's decision. Because there was no consent from DeBrodie or Legal Guardian, the court declined to consider the fitness and propriety of the proposed adult adoption. The court did find, however, that "[t]here is little doubt that [the Martins] love [DeBrodie] and that they wish the best for him."

The Martins filed a post-trial motion alleging that the court erred in finding that either DeBrodie's or Legal Guardian's consent to the adoption was required. The court denied the motion. The Martins appeal.

## STANDARD OF REVIEW

■ We will affirm the circuit court's judgment in an adoption proceeding unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re Adoption of F.C.*, 274 S.W.3d 478, 482 (Mo.App.2008). In this case, the material facts are undisputed, and the Martins' allegations of error concern only the court's interpretation of the adoption statutes. Hence, we review the Martins' allegations of error *de novo*, giving no deference to the circuit court's decision. *In re Schnieders*, 178 S.W.3d 632, 633 (Mo.App.2005).

"The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *In re Boland*, 155 S.W.3d 65, 67 (Mo. banc 2005). When the words of a statute are clear, " 'there is nothing to construe beyond applying the plain meaning of the law.' " *State ex rel. Valentine v. Orr*, 366 S.W.3d 534, 540 (Mo. banc 2012) (citation omitted). We " 'will look beyond the plain meaning of the statute only when the language is ambiguous or would lead to an absurd or illogical result.' " *Id.* (citation omitted). "A statute is ambiguous when its plain language does not answer the current dispute as to its meaning." *Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891, 895 (Mo. banc 2009).

## ANALYSIS

■ In Points I and II, the Martins contend the circuit court erred in concluding that, because DeBrodie is an adult, either his consent to the adoption or Legal Guardian's consent is required. They assert that the consent statute is ambiguous as to the consent required to adopt mentally incapacitated adults and that, to apply the statute constitutionally, we must interpret the statute as not requiring his or Legal Guardian's consent.

Section 453.030 [2] sets forth whose consent is required in adoption proceedings. In particular, Section 453.030.2 addresses when the consent of the adoptee is required: "The written consent of the person to be adopted shall be required in all cases where the person sought to be adopted is fourteen years of age or older, except where the court finds that such child has not sufficient mental capacity to give the same." The first clause of this sentence states that, when the "person" sought to be adopted is fourteen years of age or

**2.** All statutory references are to the Revised Statutes of Missouri 2000, as updated by the Cumulative Supplement 2012, unless otherwise indicated.

older, he must consent to his own adoption. The second clause of this sentence sets out an exception to the consent requirement for cases in which the court finds that "such child" does not have sufficient mental capacity to consent.

The Martins contend that the phrase "such child" in the exception refers back to "the person sought to be adopted [who] is fourteen years of age or older" in the previous clause and, therefore, the exception waives consent from all mentally incapacitated adoptees age fourteen or older. Legal Guardian, on the other hand, argues that "such child" refers to a subset of persons sought to be adopted who are fourteen years of age or older, that is, only those adoptees age fourteen or older who meet the adoption code's definition of a "child."

Chapter 453 contains two definitions for the term "child."[3] Section 453.015(1), a definitions statute, states that, "as used in sections 453.010 to 453.400," the terms "minor" or "child" mean "any person who has not attained the age of eighteen years or any person in the custody of the division of family services who has not attained the age of twenty-one." Section 453.090, which sets out the legal consequences of adoption, contains a much broader definition of "child," as it states that "[t]he word 'child' as used in this section, shall, unless the context hereof otherwise requires, be construed to mean either a person under or over the age of eighteen years." § 453.090.5. Because Section 453.090.5 expressly limits its broad definition of "child" to only Section 453.090 and Section 453.030 is within the range of statutes to which Section 453.015's definition applies, the plain language of these statutes directs us to use Section 453.015(1)'s narrower definition of "child."

Applying Section 453.015(1)'s definition of "child" to Section 453.030.2's exception to the consent requirement, only those mentally incapacitated persons who are between the ages of fourteen through seventeen are exempt from the consent requirement. Mentally incapacitated persons who are age eighteen or older do not fall under the exception. Hence, if "such child" in Section 453.030.2's exception to the consent requirement does not refer back to all persons age fourteen or older but instead refers only to those persons fourteen or older who meet Section 453.015(1)'s definition of "child," then the plain language of Section 453.030.2 appears to require the consent of all adults, even those who are mentally incapacitated, before they can be adopted.

This interpretation essentially disqualifies from adoption mentally incapacitated adults like DeBrodie, who is presumed incompetent under Section 475.078.3 and whom the court found to be incapable of consenting. Rather than argue for such a result, Legal Guardian asserts that we should interpret Section 453.030.2 as requiring *either* the adult adoptee's consent or, if the adult adoptee is incapable of consenting, the consent of the adult adoptee's legal guardian. There is no provision in the plain language of Section 453.030.2, however, for substituting a legal guardian's consent in place of a mentally incapacitated adult adoptee's consent.

The plain language of Section 453.030.2 does not settle the dispute as to whether DeBrodie's consent or Legal Guardian's consent was required before DeBrodie could be adopted. Section 453.030.2 is, therefore, ambiguous regarding the con-

---

**3.** A third definition of "child" appears in Section 453.065, but it concerns adoptees who are potential subsidy recipients and applies to only the statutes concerning subsidies, Sections 453.065 to 453.074.

sent requirement for mentally incapacitated adult adoptees, and we must construe the statute to resolve the ambiguity. *Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 3 (Mo. banc 2012).

When construing an ambiguous statute, we "may review the earlier versions of the law, or examine the whole act to discern its evident purpose, or consider the problem that the statute was enacted to remedy." *In re M.D.R.*, 124 S.W.3d 469, 472 (Mo. banc 2004). We do not read the statute in isolation but, instead, consider "statutes involving similar or related subject matter when the statutes illuminate the meaning of the statute being construed." *BASF Corp. v. Dir. of Revenue*, 392 S.W.3d 438, 444 (Mo. banc 2012). "It is presumed that consistent statutes relating to the same subject matter are intended to be read consistently and harmoniously in their many parts." *Id.*

Construing Section 453.030.2, we note that the exception to the consent requirement was originally added in 1947. § 453.030.2, RSMo 1949. At that time, the adoption code did not have a general definitions statute. There was a definition of "child" in Section 453.090's consequences of adoption statute. Section 453.090.5, RSMo 1949, defined "child" to refer to all persons over and under the age of twenty-one but, like the present version of Section 453.090.5, the 1949 version limited the applicability of this broad definition of "child" to only Section 453.090. Outside of Section 453.090, the adoption code did not define the term "child" as it was used in Section 453.030 or any of the other adoption statutes.

Case law, however, had interpreted the term "child" in the adoption code to refer not to the age of the adoptee, but to the familial relationship between parent and child. *State ex rel. Buerk v. Calhoun*, 330 Mo. 1172, 52 S.W.2d 742, 742 (1932); *In re Moran's Estate*, 151 Mo. 555, 52 S.W. 377, 378 (1899). The issue in both *Buerk* and *Moran* was whether Missouri's adoption statutes allowed adult adoptions. *Buerk*, 52 S.W.2d at 742–43; *Moran*, 52 S.W. at 377–78. In ruling that they did, the Court in *Buerk* held that the term "child" in the adoption statutes "is used in the sense of its relation to the word 'parent,' and does not signify minority." 52 S.W.2d at 742. Accord *Brock v. Dorman*, 339 Mo. 611, 98 S.W.2d 672, 676 (1936).

When Section 453.015's general definitions statute was enacted in 1982, it did not contain a definition of the term "child." § 453.015(1), RSMo Supp.1982. Instead, the statute defined only the term "minor," stating that the term referred to persons under eighteen. *Id.* It was not until 1997 that Section 453.015(1) was amended to say that both "minor" and "child" refer to persons under eighteen. § 453.015(1), RSMo Cum.Supp.1997.

Although the present version of Section 453.015(1) expressly provides that its under-eighteen definition of "child" applies to Sections 453.010 through 453.400, there are at least three other statutes within this range of statutes in which the term "child" necessarily includes adult adoptees. The first is Section 453.010, which sets out the proper venues for filing an adoption petition. Section 453.010.1 provides that "[a]ny person desiring to adopt another person as his or her *child*" should file the petition in the juvenile court of the county where the petitioner resides, where "[t]he *child* sought to be adopted was born," where "[t]he *child* is located at the time of the filing of the petition," or where "[e]ither birth person resides." (Emphasis added.) This is the only venue statute in the adoption code, so the term "child" in this statute must refer to adult, as well as minor, adoptees.

The second statute that uses the term "child" in reference to both minor and adult adoptees is Section 453.080.3, which mandates what an adoption decree should contain. Section 453.080.3 states that, if the court determines an adoption should be finalized, it should issue a decree "ordering that from the date of the decree the adoptee shall be for all legal intents and purposes the *child* of the petitioner or petitioners." (Emphasis added.) This is the only statutory provision concerning the contents of an adoption decree; therefore, it must apply to all adoptions, regardless of the age of the adoptee. Moreover, because Section 453.090 provides that the consequences of adoption apply to both minor and adult adoptees, it is reasonable that the legislature would require the court to declare the adoptee—regardless of the adoptee's age—the "child" of the petitioners for all legal intents and purposes, as the petitioners are now the adoptee's "parents."

A third statute in which the term "child" necessarily refers to both minor and adult adoptees is Section 453.170. Section 453.170.1 discusses Missouri's recognition of adoptions in other states, noting that "Missouri shall, from the date of the adoption hold the adopted person to be for every purpose the lawful *child* of its parent or parents by adoption as fully as though born to them in lawful wedlock." (Emphasis added.) Similarly, Section 453.170.2 provides that Missouri will recognize adoptions that occur "in a foreign country and the adopted *child* has migrated to the United States." (Emphasis added.) Because Missouri allows both minor and adult adoptions, it would be illogical for the state to recognize only minor adoptions and not adult adoptions from other states and foreign countries.

We interpret Sections 453.010, 453.080.3, and 453.170 as using the term "child" to refer to minor and adult adoptees, despite their inclusion in the range of statutes to which Section 453.015(1)'s under-eighteen definition of "child" expressly applies, because this interpretation furthers the adoption code's purpose of allowing both minors and adults to be adopted and to receive the benefits of being adopted. Interpreting the term "child" in Section 453.030.2's exception to the consent requirement to refer to mentally incapacitated adults as well as mentally incapacitated minors would also further this purpose. Restricting the exception to only mentally incapacitated minors would effectively prevent mentally incapacitated adults who are unable to give consent from being adopted, a result that is absurd.

■ Legal Guardian seeks to avoid this absurd result by construing Section 453.030.2 to require the legal guardian's consent in place of the mentally incapacitated adult's consent. There is no support in the adoption code for such a construction, however. None of the adoption statutes explicitly or implicitly provide for substituting a legal guardian's consent for a mentally incapacitated adult's consent. Moreover, requiring the legal guardian's consent before the court can act on the adoption petition is contrary to Section 453.060.4. Section 453.060.4 provides that, so long as all of the required parties listed Section 453.060.1 have been served, the court can act on the adoption petition without the consent of *any party* except that of a parent where the adoptee is a minor:

4. Upon service, whether personal or constructive, the court may act upon the petition without the consent of any party, except that of a parent whose consent is required by sections 453.030 to 453.050, and the judgment is binding on all parties so served. Any such party has the right to appeal from the judg-

ment in the manner and form provided by the civil code of Missouri.

The parties required to be served under Section 453.060.1 include:

(1) Any person, agency, organization or institution whose consent to the adoption is required by law unless such consent is filed in court;

(2) Any person whose consent to the adoption, according to the allegation of the petition for adoption, is not required for the reasons set forth in subdivision (6) or (7) of section 453.040;

(3) Any person, agency, organization or institution, within or without the state, having custody of the child sought to be adopted under a decree of a court of competent jurisdiction even though its consent to the adoption is not required by law;

(4) The legally appointed guardian of the child[.] [4]

While Section 453.060.1 requires that the legal guardian be served with the adoption petition, Section 453.060.4 does not require the legal guardian's consent before the court can act upon the adoption petition. Indeed, aside from a parent's consent to a minor's adoption, Section 453.060.4 allows the court to act on the adoption petition without the consent of any other party whose consent is otherwise required by law.[5]

The implication of Section 453.060.4 is that the decision as to whether an adoption should be granted does not rest upon the consent of the adoptee's legal guardian. Rather, this decision rests upon the court's determination that the adoption would be in the adoptee's best interest. That the court's determination is paramount is evident from the statutory power the legislature has expressly bestowed upon the juvenile court in adoption proceedings. Section 211.031.1(4) grants the juvenile court or the family court, in circuits that have a family court, exclusive original jurisdiction over adoption proceedings, and Section 453.030.1 directs the court to give or withhold approval of an adoption "as the welfare of the person sought to be adopted may, *in the opinion of the court,* demand." (Emphasis added.)

The Supreme Court has recognized that, under the adoption statutes, the court's opinion as to the adoptee's welfare prevails over the legal guardian's decision to give or refuse consent. In *In re Duren,* 355 Mo. 1222, 200 S.W.2d 343, 344 (1947), the legal guardian of a minor whose parents

---

4. This is another instance where the term "child" in an adoption statute should be interpreted to include both minor and adult adoptees, despite Section 453.060's inclusion in the range of statutes to which Section 453.015(1)'s definition of "child" is to apply. Because a legal guardian's responsibilities under Section 475.120.3 include, among other things, providing "for the ward's care, treatment, habilitation, education, support and maintenance," assuring "that the ward resides in the best and least restrictive setting reasonably available," and promoting and protecting "the care, comfort, safety, health, and welfare of the ward," the legal guardian should receive notice if the ward, whether a minor or an adult, is the subject of an adoption petition.

5. Despite Section 453.060.4's directive that the court can act on an adoption petition without the consent of any party except that of a parent to a minor's adoption, Legal Guardian insists that the court cannot proceed to a hearing on an adult adoption petition without the consent of the adult adoptee or the adult adoptee's legal guardian because Section 453.030.11 requires such consent. We disagree. Section 453.030.11 states: "Where the person sought to be adopted is eighteen years of age or older, his written consent alone to his adoption shall be sufficient." This provision says only that the adult adoptee's consent is sufficient, by itself, to grant the adoption, not that such consent is required.

had died refused to consent to the minor's adoption. In determining that the legal guardian's consent was not required, the Court stated that the "ultimate decision" as to whether the adoption is in the child's welfare is left to the court and not the "wishes or caprice of the guardian." *Id.* at 347. The Court noted that, to find otherwise would make the court "a mere figurehead with no authority or discretion." *Id.* The Court did not believe it was a fair construction of the adoption statutes "to say that an officer of a probate court is vested with power by a mere dissent to nullify adoption proceedings in the juvenile division of a circuit court, which ... is specifically vested by statute with exclusive jurisdiction over adoption proceedings[.]" *Id.* Thus, the Court held that, "while the guardian is entitled to notice, and to appear, dissent and defend in the adoption proceeding, yet he cannot control it." *Id.* Although based upon the 1939 statutes, *Duren*'s reasoning is equally applicable to the current version of the adoption statutes.

 In light of the adoption code as a whole, its history, and its purpose, we construe Section 453.030.2's language, "The written consent of the person to be adopted shall be required in all cases where the person sought to be adopted is fourteen years of age or older, except where the court finds that such child has not sufficient mental capacity to give the same" as excepting from the consent requirement *all* mentally incapacitated persons age fourteen and older whom the court has found to be unable to give consent. As in some of the other adoption statutes, construing the term "child" in this statute to include adults furthers the

adoption code's purpose, expressed in Section 453.090, of allowing both minors and adults to be adopted and to receive the benefits of being adopted.

Furthermore, we cannot reasonably construe the adoption code as requiring the consent of a mentally incapacitated adult's legal guardian, if one exists, as a substitute for the mentally incapacitated adult's consent. While Section 453.060.1 entitles a legal guardian to notice and an opportunity to be heard in the adoption proceeding, Section 453.060.4 plainly states that the only party whose consent must be obtained before the court can act on the petition is a parent in a minor's adoption.[6] The legislature's giving the juvenile court "exclusive jurisdiction" over adoption actions and directing it to give or withhold its approval of an adoption "as the welfare of the person sought to be adopted may, in the opinion of the court, demand" clearly shows that the legislature has entrusted the court with the sole power to decide, based upon all of the evidence before it, whether the proposed adoption is in the adoptee's best interest.

Because the court determined that De-Brodie, a mentally incapacitated adult, was unable to give consent, Section 453.030.2 did not require his consent to be adopted. The court erred in finding that either his consent or Legal Guardian's consent was required before it could consider the fitness and propriety of the Martins' proposed adoption.

## CONCLUSION

The circuit court's judgment denying the Martins' adoption petition is reversed, and

---

**6.** This is not to say that the court cannot, or should not, consider the legal guardian's opinion. While the legal guardian's opinion is not a prerequisite to the adoption, it is a relevant factor for the court to consider in deciding whether the adoption is in the adoptee's best interest.

the case is remanded for further proceedings consistent with this opinion.

All concur.