

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **BRYAN KEITH MARTIN AND MARY ELIZABETH MARTIN,** | ) |
| | ) **WD82024** |
| **Appellants,** | ) |
| | ) **OPINION FILED: April 2, 2019** |
| **v.** | ) |
| | ) |
| **CAROLYN SUMMERS, ET AL.,** | ) |
| | ) |
| **Respondents.** | ) |

**Appeal from the Circuit Court of Callaway County, Missouri**
The Honorable Jeff Harris, Judge

Before Division Two: Edward R. Ardini, Jr., Presiding Judge, Gary D. Witt, Judge and
Thomas N. Chapman, Judge

Bryan Keith Martin and Mary Elizabeth Martin (collectively the "Martins") appeal

the judgment of the Circuit Court of Callaway County dismissing their Petition for

Declaratory Judgment and Damages Claims for Wrongful Death ("Petition"). The Petition

sought a declaration that the Martins were proper parties to bring a wrongful death claim

as the equitable adoptive parents of Carl Lee DeBrodie ("DeBrodie"). The Petition was

originally brought against a number of defendants but, following voluntary dismissals in

the circuit court, the Respondents before this Court are Carolyn Summers (who is the

biological mother of DeBrodie) ("Summers") and Carol Samson, (who is the personal representative of the Estate of Carl Lee DeBrodie and Next Friend to Summers) ("Samson") (collectively, "Defendants") and Second Chance Homes of Fulton, LLC ("Second Chance Homes"). Following the filing of this appeal and briefing of the issues, the Martins moved to dismiss the appeal as to Second Chance Homes, leaving only the Defendants as Respondent's in this action. The Martins bring seven allegations of error on appeal. We affirm.

## Factual Background[1]

The relevant and somewhat tortured legal history of this case began in 1999. In September 1999, the Cole County Circuit Court appointed Mary Martin to be the legal guardian of DeBrodie, who was then thirteen years old and considered a special needs child. In the guardianship judgment, that court found that DeBrodie's biological mother, Summers, was "severely intellectually, psychologically, socially, and occupationally impaired" and that both she and DeBrodie's biological father[2] were unable or unfit to assume the duties of guardianship. The court found that grounds existed to terminate the parental rights of DeBrodie's mother as to DeBrodie and his younger sister, but found that termination would not be in the children's best interest. Mary Martin continued to serve as DeBrodie's legal guardian until 2004 when he turned eighteen and he lived with the Martin's in their home. At some point after DeBrodie turned 18, the Callaway County

---

[1] "When this Court reviews the dismissal of a petition for failure to state a claim, the facts contained in the petition are treated as true and they are construed liberally in favor of the plaintiffs." *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008).

[2] DeBrodie's biological father is now deceased.

2

Circuit Court adjudged DeBrodie to be an incapacitated and disabled adult. DeBrodie became a ward of the Public Administrator of Callaway County and a new legal guardian was appointed.

In 2011, the Martins sought to legally adopt DeBrodie as an incapacitated and disabled adult. *In re DeBrodie*, 400 S.W.3d 881, 883 (Mo. App. W.D. 2013) ("*In re DeBrodie I*"); *In re DeBrodie*, 452 S.W.3d 644 (Mo. App. W.D. 2014) ("*In re DeBrodie II*").[3] The adoption was initially denied by the circuit court due to DeBrodie's inability to consent to the adoption. This Court reversed and remanded that judgment finding, under the circumstances, DeBrodie's consent was not statutorily required. *In re DeBrodie I*, 400 S.W.3d at 889. On remand, the circuit court heard additional evidence and, thereafter, denied the Martins' petition for adoption on the grounds that they failed to establish by clear and convincing evidence the fitness or propriety of the adoption, or that the welfare of DeBrodie demanded that the adoption be granted. This Court affirmed the judgment, in part based on a consideration of the familial ties between DeBrodie and his mother that would be severed by such an adoption. *In re DeBrodie II*, 452 S.W.3d at 648-51. DeBrodie's father was deceased but DeBrodie received a monthly monetary death benefit through his father, although it was unclear how much it was or where the benefit derived. *Id.* at 653. DeBrodie maintained a close relationship with his mother who:

> visited him at least once a month, more if transportation allowed, and engaged in weekly telephone conversations with [DeBrodie]. [DeBrodie] references his mother as "Momma." [DeBrodie] and his mother share an undisputed affectionate bond. [DeBrodie] exhibits excitement when his

---

[3] Portions of the facts are quoted from the opinion in *In re DeBrodie I* and *In re DeBrodie II*, without further attribution.

> mother is scheduled to call or visit and asks for his hair to be done or to put on special clothing.  He cries when she is unable to visit.

*In re DeBrodie II*, 452 S.W.3d at 648.  This Court found that "mentally incapacitated adults have a significant liberty interest in protecting their intact familial ties from interference by a third party."  *Id.*  Further, although there was certainly some evidence that DeBrodie would benefit from being adopted by the Martins, the circuit court's finding to the contrary was not against the weight of the evidence.  *Id.* at 656.

In 2017, DeBrodie was a resident of Second Chance Homes.  Second Chance Homes reported DeBrodie missing on April 17, 2017.  On April 24, 2017, DeBrodie's body was found encased in concrete inside a locked storage unit in Fulton.

The Martins filed their Petition on April 9, 2018.  The Petition named as defendants Summers and Samson as well as Second Chance Homes, and the unknown parties responsible for DeBrodie's death.  The Petition sought a declaration that the Martins were entitled to sue for wrongful death pursuant to section 537.080[4] as the equitable adoptive parents of DeBrodie.  The Petition also sought declarations that the Martins were entitled to recover from all defendants--other than Summers and Sampson--compensatory and aggravated damages in the amount of twenty-one million dollars for the negligent death of DeBrodie and twenty-one million dollars for the intentional torts which caused the wrongful death of DeBrodie.

On May 21, 2018, Summers and Samson filed a joint Motion to Dismiss ("Motion to Dismiss") alleging the Martins lacked the legal capacity to sue, citing to Rule

---

[4] All statutory citations are to RSMo 2016 as currently supplemented unless otherwise noted.

55.27(a)(3).[5]  Second Chance Homes filed a separate Motion to Dismiss or in the Alternative Motion for Judgment on the Pleadings on June 22, 2018.  The circuit court held a hearing on both motions and entered judgment dismissing the Petition on July 17, 2018[6] ("Judgment").  The Court dismissed the Petition for four stated reasons: (1) the Martins lacked standing to bring a wrongful death claim pursuant to section 537.080 because they were not the natural or adoptive parents of DeBrodie; (2) the Martins' claims are barred by res judicata, in that their attempt at equitable adoption has already been adjudicated and rejected in other proceedings (referencing the Martins' previous adoption proceedings); (3) Missouri does not recognize a right for "equitable parents" to recover on behalf of a deceased child; and (4) only one action may be brought under section 537.080 for the death of DeBrodie and there is an existing previously filed lawsuit that bars the current action. The Judgment dismissed all claims and all defendants.[7]  This appeal followed.[8]

**Motion to Dismiss**

After the conclusion of the briefing in this matter, the Martins filed a Motion to Dismiss this appeal as to Second Chance Homes.  The Martins alleged in that motion that on December 5, 2018, a judgment was entered under seal in a wrongful death case regarding the death of DeBrodie brought by the Defendants in the United States District Court for the Western District of Missouri ("Federal Judgment").  According to the

---

[5] All rule references are to Missouri Supreme Court Rules (2018).

[6] The Judgment was originally entered on July 2, 2018, as a docket entry followed by typed initials.  The Judgment was reissued on July 17, 2018, as a separate document denominated a judgment and signed by the judge.

[7] The Petition made various allegations against other unknown parties who may have been responsible for DeBrodie's death.  These additional defendants were dismissed by Martins without prejudice on July 12, 2018, after the Judgment was entered.

[8] The Defendants have not filed a Brief in this proceeding.

5

Martins, the Federal Judgment releases Second Chance Homes from all further liability for the death of DeBrodie and as such, renders this appeal moot as to Second Chance Homes. Second Chance Homes filed Suggestions in Opposition which did not dispute that the Federal Judgment renders this appeal moot as to Second Chance Homes but contends that the appeal is now moot in its entirety. The Defendants filed no response to that motion. The Martins argue that the appeal, as to the Defendants, still presents a live controversy because it seeks a declaration that the Martins are equitable parents of DeBrodie who have standing to bring a wrongful death claim against other tortfeasors in later actions.

A copy of the Federal Judgment was not filed with this Court. We have no ability to determine what affect the Federal Judgment might have on the rights and liabilities of the Defendants. It does not appear based solely on the Motion to Dismiss and Suggestions in Opposition that the question of whether the Martins may bring a claim for wrongful death based on their position as alleged equitable parents of DeBrodie was addressed by the federal court. Because the Martins and Second Chance Homes are in mutual agreement that the appeal is moot as to Second Chance Homes we may dismiss that portion of this appeal without the benefit of knowing the terms of the Federal Judgment. The Martins, however, still allege that there exists a live controversy as to their claims against the Defendants and we cannot determine otherwise without reviewing the Federal Judgment.

The Martins' Motion to Dismiss Second Chance Homes is granted and Second Chance Homes is dismissed from this appeal. We proceed with the appeal only as to the Defendants.

6

## Standard of Review

"The standard of review for a trial court's grant of a motion to dismiss is *de novo*." *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008). "When this Court reviews the dismissal of a petition for failure to state a claim, the facts contained in the petition are treated as true and they are construed liberally in favor of the plaintiffs." *Id.*

## Discussion

The Martins raise seven points of error on appeal. As we find their fourth point on appeal dispositive we begin there. The Martins allege that the circuit court erred in granting Defendant's Motion to Dismiss for lack of standing to sue for the wrongful death of DeBrodie because the Legislature intended equitable parents to have standing as first class beneficiaries under section 537.080.

The Martins' Petition sought a declaration from the circuit court recognizing "their rights and interests as persons entitled to sue for wrongful death of Carl Lee DeBrodie under Missouri statutes and law, specifically including [the Martins'] standing and status as persons, parents of Carl Lee DeBrodie, entitled to sue for the death of Carl Lee DeBrodie under § [537.080] RSMo. . . ." The Martins did not seek a declaration of equitable adoption beyond the scope of granting them standing to bring a wrongful death action. They are further not requesting that Summers' parental rights be terminated or a declaration that Summers is not a proper party to bring a wrongful death action on DeBrodie's behalf. In fact, the Martins only seek to share in any wrongful death recovery with Summers as additional First Class plaintiffs under section 537.080 in any wrongful death action. Because of the dismissal of the other defendants, this request for declaration of equitable

7

adoption remains as the only live controversy in the Petition. Thus, if such a declaration of equitable adoption is made and the Martins still lack standing to bring a claim under section 537.080 then the circuit court did not err in finding that their Petition failed to state a claim upon which relief could be granted. This Court then need not answer the question of whether the Martins should be declared as equitable adoptive parents of DeBrodie, or even if such a declaration could be made given this Court's prior holdings in *In re DeBrodie I* and *In re DeBrodie II*. We must therefore first address the question of whether equitably adopted parents have standing as first class litigants under Section 537.080.1(1) to bring a cause of action for wrongful death.

"Standing is a question of law that we review de novo." *Borges v. Mo. Pub. Entity Risk Mgmt. Fund*, 358 S.W.3d 177, 180 (Mo. App. W.D. 2012). "We consider the petition along with any other non-contested facts to determine whether the petition should be dismissed due to Petitioners' lack of standing." *Id.* Courts have a duty to determine if a party has standing prior to addressing the substantive issues of the case. *Farmer v. Kinder*, 89 S.W.3d 447, 451 (Mo. banc 2002). "A party seeking relief has the burden to establish that it has standing to maintain its claim." *Brannum v. City of Poplar Bluff*, 439 S.W.3d 825, 829 (Mo. App. S.D. 2014) (citing *Borges,* 358 S.W.3d at 181).

Section 537.080.1 governs who has standing to bring a claim for wrongful death. The Missouri legislature created three classes of parties who may bring suit for wrongful death. Section 537.080.1. As relevant to this case, parents of a decedent are included in the first class. Section 537.080.1(1). The first class includes "the spouse or children or the surviving lineal descendants of any deceased children, natural or adopted, legitimate or

8

illegitimate, or by the father or mother of the deceased, natural or adoptive." Section 537.080.1(1). If there is no person listed in the first class then the statute directs that one looks to the second class. Section 537.080.1(2). Siblings and descendants of siblings are in the second class. Section 537.080.1(2). Then, only if there are no persons provided for in class one or two, the court is allowed to appoint a *plaintiff ad litem* to bring the claim under the third class. Section 537.080.1(3).

The Martins allege that they are the "equitable" adoptive parents of DeBrodie and seek a declaration that "equitable" adoptive parents are first-class litigants under section 537.080.1(1) the same as legally adoptive parents. In support of this contention they first argue that the terms "natural" and "adoptive" in section 537.080 are ambiguous and leave open the question of whether equitably adoptive parents may have standing to bring an action and to recover damages as first class beneficiaries. For further support the Martins cite to *Taylor v. General Motors Corp.*, 715 S.W.2d 925 (Mo. banc 1986). In *Taylor*, an aunt[9] brought an action for wrongful death of her niece, whom she alleged she had "equitably adopted." *Id.* at 926. A motion to dismiss was brought and the circuit court ruled that a separate trial on the issue of whether there had been an equitable adoption was necessary. *Id.* The circuit court ruled that there was insufficient evidence to support a declaration of equitable adoption. *Id.* The Supreme Court affirmed the holding of the circuit court on the question of the equitable adoption and found that, under the circumstances, "[t]he question whether the doctrine of equitable adoption should be applied

---

[9] The Court in *Taylor* used the terms "aunt" and "niece" to refer to the plaintiff and her deceased relatives although the findings of fact were that the deceased was the daughter of the plaintiff's cousin. *Id.* at 926. For clarity of discussion we adopt the same terms as the Court.

9

to allow an 'adoptive parent' to bring an action for the wrongful death of an 'equitably adopted child' is not ripe for determination in the absence of an appropriate and definitive decree of equitable adoption." *Id.* at 927.

The Court in *Taylor* did not hold that the aunt could recover as the equitable adoptive parent of her niece but merely that the issue was not ripe for determination. The issue was, however, squarely decided by this Court six years later in *Halterman v. Halterman*, 867 S.W.2d 559 (Mo. App. W.D. 1993). In *Halterman*, a father filed a wrongful death action for the death of his daughter. *Id.* at 559. Father's former wife, who was not the child's biological mother, filed a motion to intervene on the ground that she was the adopted mother of daughter by equitable adoption. *Id.* The Court held that the doctrine of equitable adoption "is solely for the benefit of a child" and as such not available for an alleged equitable parent seeking to recover damages for the death of a child. *Id.* at 560. As explained by this Court in *Halterman*, "equitable adoption was developed because the court was not willing to allow the failure of a party to properly execute and record a deed to work an irreparable harm on the child." *Id.* The Court found that doctrine of equitable adoption was "developed solely to benefit the child." *Id.* (citing *Drake v. Drake*, 43 S.W.2d 556 (Mo. banc 1931). This original intent was supported by *Rumans v. Lighthizer*, 249 S.W.2d 397 (Mo. 1952) in which the Missouri Supreme Court held that equitable adoption could not be used to establish heirship for the purposes of an alleged "adopted" parent inheriting from a child who was alleged to have been equitably adopted. *Id.*; *See also Sarazin v. Union R. Co.*, 55 S.W. 92 (Mo. 1900) (declining to consider equitable adoption in a wrongful death case brought by "adoptive" parents after the

adoption agreement was found to be deficient and the adoption void, noting that such doctrine was for the benefit of the child).

The Martins seek to challenge the validity of *Halterman* finding fault that the opinion failed to cite to *O'Grady v. Brown*, 654 S.W.2d 904 (Mo. banc 1983). *O'Grady* construed the wrongful death statute broadly to find that the term "person" as used in section 537.080 included a viable human fetus. *Id.* at 910. The Court found that a narrow reading of the statute would be contrary to its purpose to allow recovery not previously available under the common-law. *Id.* at 909. While certainly *O'Grady* makes a case for a broad interpretation, *O'Grady* itself notes that a contrary finding would result in a tortfeasor who causes a prenatal death being treated more favorably than one who merely causes a prenatal injury. *Id.* at 909-10. While certainly the discussion of *O'Grady* may speak to the issues in *Halterman* and deal with the same underlying statute, the considerations of this Court in *Halterman* were not so similar to that in *O'Grady* that we can find fault with this Court for failing to cite to the prior decision in its analysis or to find it controlling of the issues presented in that later case.

Neither does this Court's failure cite to *Holt v. Burlington N. R.R. Co.*, 685 S.W.2d 851 (Mo. App. W.D. 1984) call into question *Halterman*'s validity. *Holt* held that a child, declared equitably adopted by his aunt six months after aunt's death, could bring an action against the railroad whose train struck and killed his aunt. *Id. Halterman* does not conflict with the holding in *Holt* because the equitable adoption and subsequent wrongful death suit was brought for the benefit of the equitably adopted child. *See accord, Coon v. Am. Compress Steel, Inc.*, 207 S.W.3d 629 (Mo. App. W.D. 2007) (affirming the validity of the

11

equitable adoption of a child after adoptive mother's death in a car accident and affirming child as a proper plaintiff to prosecute a wrongful death claim on adoptive mother's behalf).

The Martins cite to no Missouri case law, nor can we find any, in which *postmortem* equitable adoption of a child has been permitted to allow an equitable parent to recover damages for the child's death. The Martins ask that we overrule *Halterman* or, in the alternative, distinguish the holding of *Halterman* from the present case. The Martins argue that public policy dictates that we should liberally construe section 537.080 in favor of a greater number of grieving persons being granted standing. In seeking such an outcome, the Martins analogize the present case to cases of child custody disputes in which Missouri courts have found that a recognition of non-familial relationships may be in the best interests of a child. *See Bowers v. Bowers*, 543 S.W.3d 608 (Mo. banc 2018); *Cotton v. Wise*, 977 S.W.2d 263 (Mo. banc 1998). These cases are inapposite. As with *Coon* and *Holt*, these cases recognize non-familial relationships for the benefit of a child. We find no basis for extending the holdings of these cases to create a legal benefit for the alleged parent to proceed with a cause of action for damages. As noted by this Court in *Halterman*, courts will not punish a child for an adult's failure to timely and properly formalize an adoption. The same justification does not operate in reverse to benefit an adult who controls whether or not a legal relationship with a child is formalized.[10] The reasoning in *Halterman* was and remains sound. The doctrine of equitable adoption is for the benefit of a child not so that the "adoptive" parent may recover damages for the wrongful death of

---

[10] We recognize that the Martins did seek to legally adopt DeBrodie before his death. However, a final judgment affirmed by this Court denied that adoption. That decision does not act as support for later recognizing an equitable adoption contrary to a final judgment denying an actual adoption.

12

a child.[11]  To the extent that the Martins are correct that the language of section 537.080 might allow for the doctrine of equitable adoption, the courts have made clear that the statute only allows for recovery of damages by an equitably adopted child and not by equitably adopted parents.

We recognize that the Martins shared a close familial like relationship with DeBrodie and viewed their role as his *de facto* parents.  They took him into their home and raised him through most of his formative years and clearly cared deeply for him.  We also do not doubt that the Martins sincerely grieve the loss of DeBrodie.  Missouri's wrongful death statute does not, however, encompass all parties who grieve the loss of an individual. The statute only confers on certain parties the authority to bring and recover damages from a wrongful death suit and sound precedent holds that equitable adoptive parents are not parties given the authority to sue for damages under section 537.080.1(1).  *Halterman*, 867 S.W.2d at 560.  As such, the circuit court did not err in granting the Defendant's Motion to Dismiss.[12]

---

[11] Additionally, the Martins contend that section 537.080 should be construed to allow for equitable adoption so that the person who raised the child may bring suit if the child's parents are dead.  Section 537.080 already allows for such a situation where, should a person not have a representative in the first or second class, a court may appoint a third party to bring an action on behalf of the deceased.

[12] The Martins mention briefly within the argument for their fourth point on appeal that the Petition argued that interpreting section 537.080 as not allowing "equitably adopted" parents to be considered first-class beneficiaries would be "unconstitutional in violation of their rights to due process, equal rights, open courts, and right and just remedies administered without denial pursuant to Article I, Sections 2, 10, and 14 of the Missouri Constitution and the 14th Amendment to the U.S. Constitution."  The constitutionality of section 537.080 was not raised in the trial court or in the point relied on and thus is not properly before this Court. *Eltiste v. Ford Motor Co.*, 167 S.W.3d 742, 750 (Mo. App. E.D. 2005).  Even were we to gratuitously review such an argument, the Martins fail to provide this Court with any substantive legal analysis and merely make the conclusory statement that the present interpretation of section 537.080 is unconstitutional.  "If a party does not support contentions with relevant authority or argument beyond conclusory statements, the point is deemed abandoned." *Kuenz v. Walker*, 244 S.W.3d 191, 194 (Mo. App. E.D. 2007) (citing *Houston v. Weisman*, 197 S.W.3d 204, 206 (Mo. App. E.D. 2006)).

The circuit court did not err in finding that, even if declared to be equitable adoptive parents of DeBrodie, the Martins had no right to bring a wrongful death claim under section 537.080. Equitable adoption was the sole theory by which the Martins sought to bring an action under section 537.080. As such, the circuit court's finding that such a theory was invalid was dispositive of the entirety of the Petition.[13]

## Conclusion

The circuit court did not err in finding that, even were the Martins to be deemed the equitable adoptive parents of DeBrodie, they would not have had standing to bring a wrongful death action under section 537.080. As such, the circuit court did not err in dismissing the Petition for failure to state a claim upon which relief could be granted as to the Defendants. We grant the Martins' motion to dismiss Second Chance Homes from this appeal and affirm the Judgment of the circuit court as to the Defendants.

_____
Gary D. Witt, Judge

All concur

---

[13] We also note, as was raised by Second Chance Homes in its Suggestions in Opposition to the Motion to Dismiss filed by the Martins in this appeal, the sole remaining defendants to the Petition which seeks damages for the wrongful death of DeBrodie are DeBrodie's mother and her next friend who are not alleged to have had any involvement in or liability for DeBrodie's disappearance or death.

14