

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| MALY COMMERCIAL REALTY, INC., et al., | ) ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | WD82183 |
| | ) | (consolidated with WD82278) |
| JACK MAHER, SR., et al., | ) | |
| Respondents. | ) | FILED: September 10, 2019 |

**Appeal from the Circuit Court of Boone County
The Honorable Kimberly J. Shaw, Judge**

**Before Division One: Cynthia L. Martin, P.J., and
Victor C. Howard and Alok Ahuja, JJ.**

Maly Commercial Realty, Inc. and Mel Zelenak (collectively "Maly") sued Aegis Investment Group II, LLC and Jack Maher Sr. (collectively "Aegis") in the Circuit Court of Boone County. Maly alleged that it was entitled to a real-estate commission related to Aegis' sale of a piece of commercial property in Columbia. The circuit court entered judgment for Aegis following a bench trial. Maly appeals. It argues that the judgment is not supported by substantial evidence and is against the weight of the evidence. Maly also argues that the circuit court should have placed the burden on Aegis to prove that negotiations with the property's ultimate purchaser were abandoned after Maly introduced Aegis to that purchaser. We affirm.

**Factual Background**[1]

Zelenak is a real-estate broker with Maly in Columbia. Zelenak had worked on previous real-estate transactions with Anup Thakkar, a local businessperson who owned multiple Dunkin' Donuts franchise stores. In 2014, Thakkar was looking for a small parcel of property on the north side of Columbia on which to construct a new Dunkin' Donuts franchise store. Thakkar asked Zelenak about property at the southwest corner of Rangeline Street and Blue Ridge Road (the "Blue Ridge property").

The Blue Ridge property was a 40-acre tract of land owned by Aegis. Maher was one of Aegis' members. He was also a licensed real estate broker. Maher's company had a listing agreement with Aegis for the Blue Ridge property.

Zelenak was aware that Maher was part of the group which owned the Blue Ridge property, and he knew Maher from prior dealings. In early November 2014, Zelenak contacted Maher about the Blue Ridge property, and arranged a meeting. On November 12, 2014, Maher, Zelenak, Thakkar, and one of Thakkar's business partners met at Maher's office to discuss the property. The meeting was brief. At trial, Maher described the meeting as simply "a meet-and-greet," because "Thakkar wanted to buy a lot [in the Blue Ridge property], and I said I wasn't interested." Maher was not interested in selling because he wanted to ground lease the property. He testified that Aegis' plan for the property was "to hopefully get a grocer to develop it and retain ownership, so that you retain income forever, no[t] just one-time sales." Thakkar testified of the November 2014 meeting: "[v]ery fast, I learned that Mr. Maher and his group were not interested in selling the property or . . . part of it."

---

[1] "In the appeal of a bench-tried case, the appellate court views the facts in the light most favorable to the trial court's judgment." *Pearson v. AVO General Servs., LLC*, 520 S.W.3d 496, 500 n.1 (Mo. App. W.D. 2017) (citation omitted).

After the meeting Thakkar sent an email to an engineer with whom he worked, with copies to Maher and Zelenak. Thakkar stated that he and his partners were interested in buying a portion of the Blue Ridge property and asked the engineer to determine how much land would be necessary to fit his planned Dunkin' Donuts store.

The next day, Maher sent an email to the engineer stating that the discussion with Thakkar about the Blue Ridge property was preliminary, and that there was no deal. Maher also sent an email to another member of Aegis, letting him know about his meeting with Thakkar. In the email, Maher wrote that he informed Thakkar that Aegis had not set a price for sale of the property, and that it preferred to ground lease the property. In his response, Maher's fellow member asked whether it was "smart to give up a corner for a ¾ acre lot," given that Aegis was hoping to attract a "big box" store to the site.

On December 3, 2014, Maher sent Thakkar, Zelenak, and the engineer an email, stating that he and the engineer had discussed the property and that Maher was not sure that they had the access that Thakkar desired on "a .75 acre hard corner location." In the email, Maher nevertheless stated that Aegis would "look at any possibility."

Thakkar testified that, by the middle of December 2014, it was clear that Aegis' and Thakkar's interests were "not aligned": "it was quite clear that they just were not interested in selling any portion at that point, and . . . I was not interested in . . . doing a land lease or a build-to-suit at that time."

Maher testified that, after December 2014, he did not have any further contact with Zelenak regarding the Blue Ridge property. Zelenak admitted that he had "no direct involvement" concerning the sale of the Blue Ridge property after December 2014. Specifically, Zelenak acknowledged that he had no involvement with the property in 2015 or 2016, or in the negotiations that culminated in the

3

2017 sale of the property to Thakkar's group. Zelenak did, however, send Thakkar information regarding _other_ properties on the north side of Columbia for a possible Dunkin' Donuts location.

Thakkar testified at trial that he did not have any contact with Maher in 2015.[2] In 2016, Thakkar happened to have a conversation with another member of Aegis, who was apparently unaware of the prior communications between Thakkar and Maher in late 2014. Thakkar testified:

> So, as I recall, I was at Providence Road Dunkin' Donuts, happened to run into a dear friend of mine, Mr. Sanjeev Ravipudi. He . . . was a doctor here in town. And we just happened to have a . . . casual conversation, and part of that conversation led to what my plans were, as far as where we're going. And I expressed that, you know, just looking at, you know, some properties over in the north side. . . . [A]nd he happened to mention that he had a property over on the north side . . . and . . . he wanted me to check it out so [I] asked a little more information on that.
>
> He gave me, and I said, "Oh, yes, that's a property that, you know, I looked at about a year ago or so and – and nothing unfortunately came off of it."

Following his conversation with Dr. Ravipudi, Thakkar "reintroduced" himself to Maher, and the two "started conversation again." It took several months, and "several communications," before Maher would consider selling a portion of the Blue Ridge property, "but he finally decided that he may entertain it, so then we started negotiating the pricing."

Maher and Thakkar agreed on a price in January 2017. On March 3, 2017, Aegis and RPA Investment LLC (of which Thakkar was a member) entered into a contract for the sale of a one-acre tract within the Blue Ridge property, and on September 7, 2017, Aegis executed a warranty deed conveying one acre of the Blue

---

[2] Maher's testimony differed slightly from Thakkar's. Maher testified that during 2015, he would not talk to Thakkar "for four or five, six months, and then, poof, we'd talk for two or three months. And then again it would die, and that was the scenario for the next three years."

Ridge property to RPA Investment. Maher was listed as the broker of the sale. Consistent with their listing agreement, Aegis paid Maher's real estate company a six-percent commission on the sale.

After the sale, Maly filed a petition against Aegis, asserting a quantum meruit claim. Maly alleged that Zelenak was the procuring cause of the sale to RPA Investment, and that it was therefore entitled to half of the commission paid to Maher's company. The case was tried to the court on June 5, 2018. On June 20, 2018, the circuit court entered its judgment in Aegis' favor.

Maly appeals.[3]

## Standard of Review

"In reviewing a court-tried case, the appellate court will uphold the judgment of the trial court unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Ridgway v. Dir. of Revenue*, 573 S.W.3d 129, 132-33 (Mo. App. E.D. 2019) (citing *White v. Dir. of Revenue*, 321 S.W.3d 298, 207-08 (Mo. 2010)).

## Analysis

### I.

Although neither party raised an issue concerning our appellate jurisdiction, "the Court has an obligation, acting *sua sponte* if necessary, to determine its authority to hear the appeals that come before it." *Glasgow Sch. Dist. v. Howard Cnty. Coroner*, 572 S.W.3d 543, 547 (Mo. App. W.D. 2019) (citation and internal quotation marks omitted). "A prerequisite to appellate review is that there be a final judgment." *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. 1997) (citing § 512.020, RSMo). "If the trial court's judgment is not final, the reviewing court

---

[3] Maly's original appeal was dismissed for lack of jurisdiction because its notice of appeal was filed out of time. *Maly Commercial Realty, Inc. v. Maher*, No. WD82082 (Mo. App. W.D. Oct. 26, 2018). On October 29, 2018, this Court granted Maly Realty's motion for leave to file a late notice of appeal under Rule 81.07(a).

5

lacks jurisdiction and the appeal must be dismissed." *Glasgow Sch. Dist.*, 572 S.W.3d at 547 (citation omitted). "A final, appealable judgment resolves all issues in a case, leaving nothing for future determination." *Archdekin v. Archdekin*, 562 S.W.3d 298, 304 (Mo. 2018) (citation and internal quotation marks omitted).

A finality issue arises in this case because Aegis Group requested, in the prayer for relief of its answer, that it be awarded its reasonable attorney's fees. The circuit court's judgment did not address this fee request.

We recently addressed a similar issue in *Ruby v. Troupe*, No. WD82014, 2019 WL 3781691 (Mo. App. W.D. Aug. 13, 2019). As we explained in *Ruby*, Aegis did not adequately plead a claim for attorney's fees, because it did not allege a basis for its claim of attorney's fees in its answer; a bare statement in a prayer for relief is not sufficient. *Id.* at *2–3. In addition, even if Aegis had adequately pleaded an attorney's fee claim, it abandoned that claim because it did not present any evidence, at trial or otherwise, concerning its attorney's fees, nor did Aegis file a motion for attorney's fees. *Id.* at *3.

The trial court's judgment was final because it resolved the only claim before the court: Maly's quantum meruit claim. Because we have jurisdiction over this appeal, we turn to the merits of Maly's arguments.

## II.

In its first Point, Maly argues that the trial court erred when it entered judgment in favor of Aegis, because the judgment was not supported by substantial evidence and was against the weight of evidence.[4]

---

[4] A substantial evidence challenge and an against the weight of the evidence challenge are distinct claims and "must appear in separate points relied on in the appellant's brief to be preserved for appellate review." *Southside Ventures, LLC v. La Crosse Lumber Co.*, 574 S.W.3d 771, 783 n.4 (Mo. App. W.D. 2019) (citation and internal quotation marks omitted). Although Maly combined both arguments in a single Point, we review both claims because our preference is to resolve cases on the merits rather than based on procedural defects. *Id.*

The elements of a quantum meruit claim to recover a real estate commission are that the plaintiff provided brokerage services to the seller, the seller accepted the services, and the plaintiff was the procuring cause of the sale. *Incentive Realty, Inc. v. Hawatmeh*, 983 S.W.2d 156, 162–63 (Mo. App. E.D. 1998); *see also Williams v. Enochs*, 742 S.W.2d 165, 168–69 (Mo. 1987); *C. Myers & Simpson Co. v. Feese Real Estate, Inc.*, 705 S.W.2d 600, 602 (Mo. App. W.D. 1986). Here, the parties agree that the only issue is whether Zelenak was the procuring cause of the sale.

"Procuring cause is a *sine qua non* of quantum meruit recovery of a real estate commission." *Williams*, 742 S.W.2d at 167 (citation omitted).

> For a real estate broker's services to constitute the "procuring cause" of a sale, the broker's initial efforts in calling the prospective purchaser's attention to the property must have set in motion a series of events which, without break in continuity and without interruption in negotiations, eventually culminates in the sale.

*Id.* (citation omitted). "[T]he issue as to whether a broker has been the procuring cause of sale is ordinarily one of fact to be determined by the trier of the facts." *Holman v. Fincher*, 403 S.W.2d 245, 250 (Mo. App. 1966) (footnote omitted); *see also, e.g.*, *Douros Realty & Constr. Co. v. Kelley Props., Inc.*, 799 S.W.2d 179, 182 (Mo. App. E.D. 1990).

In reviewing Maly's challenges to the evidence supporting the judgment, it is significant that Maly bore the burden of proving it was the procuring cause of the sale to Thakkar's group.

> When the burden of proof is placed on a party for a claim that is *denied*, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence. If the trier of fact does not believe the evidence of the party bearing the burden, it properly can find for the other party. Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it. [¶] Consequently, substantial evidence supporting a judgment against the party with the burden of proof is not required or necessary.

7

*Adoption of K.M.W.*, 516 S.W.3d 375, 382 (Mo. App. S.D. 2017) (citations and internal quotation marks omitted). Because the circuit court is entitled to disbelieve the evidence of the party bearing the burden of proof, even if the opposing party presents no contrary evidence, "relief based on a claim that the trial court's judgment against the party having the burden of proof is against the weight of the evidence is rarely granted." *Matter of Killian*, 561 S.W.3d 411, 417 (Mo. App. S.D. 2018) (citations and internal quotation marks omitted).

But even disregarding the fact that the circuit court had the right not to believe Maly's evidence, substantial evidence – and the weight of the evidence – supported the conclusion that Zelenak's efforts were *not* the procuring cause of the 2017 sale. Although Zelenak introduced Maher and Thakkar in November 2014, the discussions which Zelenak instigated ended in December 2014. Both Maher and Thakkar testified that there was no prospect of a transaction at that time, because Aegis was not interested in selling all or part of the Blue Ridge property, and Thakkar was not interested in leasing. It is not enough that Zelenak introduced Maher to the property's ultimate purchaser. "[A]lthough it is material and important to determine who first found or discovered the prospective purchasers, such a determination is not conclusive." *Staubus v. Reid*, 652 S.W.2d 293, 294 (Mo. App. S.D. 1983); *see also Holman*, 403 S.W.2d at 250 (noting that a broker may not be the "procuring cause" entitled to a commission "even though he had found or first contacted the ultimate contracting party, showed him the property involved, or interested him in it, or had provided the principal with such party's name") (citation and footnote omitted).

After the parties' discussions ended unsuccessfully in December 2014, Thakkar testified that he and Maher did not have any contact during 2015. Confirming that no sale was anticipated, the evidence indicated that Zelenak showed Thakkar *other* potential north Columbia building sites. Then, in 2016, Dr.

8

Ravipudi – who was apparently unaware of the earlier discussions – independently suggested to Thakkar that he consider the Blue Ridge property during a "casual conversation." Thakkar then "reintroduced" himself to Maher, and the two "started conversation again." It took several months after this resumption of discussions before Maher would even consider selling a portion of the Blue Ridge property to Thakkar. Discussions in 2016 and 2017 between Thakkar and Maher – in which Zelenak was uninvolved – then led to the eventual sale.

Given this evidence that there was a definitive break in the negotiations between Thakkar and Maher at the end of 2014, and that discussions resumed in 2016 through the operation of an independent cause, the circuit court was fully entitled to find that Zelenak was not the procuring cause of the 2017 sale transaction.

Point I is denied.

### III.

In its second Point, Maly argues that the trial court erroneously applied the law because the court did not place the burden on Aegis to prove that Thakkar and Aegis abandoned their initial negotiations, or to prove that a new force renewed the abandoned negotiations and replaced Zelenak as the procuring cause of the sale.

There are several defects in this argument. First, in its opening Brief Maly cited no legal authority to support its claim that Aegis bore the burden of proving that the negotiations in November-December 2014 were abandoned. "If a party does not support contentions with relevant authority or argument beyond conclusory statements, the point is deemed abandoned." *Martin v. Summers*, 576 S.W.3d 249, 257 n.12 (Mo. App. W.D. 2019) (citation and internal quotation marks omitted). While Maly may have cited legal authority supporting its burden-of-proof argument in its reply brief, that came too late. *Patrick v. Altria Grp. Distrib. Co.*, 570 S.W.3d 138, 146 n.8 (Mo. App. W.D. 2019).

9

Even if the circuit court was required to place the burden of proof on Aegis to show that Thakkar and Maher abandoned their initial negotiations, there is no indication in the record that the court failed to do so. Neither party requested that the circuit court make findings of fact, and from the judgment it cannot be determined how the circuit court allocated the burden of proof between the parties. Moreover, even if Aegis bore the burden of proof (an issue we do not decide), the evidence at trial was sufficient to prove, by a preponderance of the evidence, that Thakkar and Maher abandoned their late-2014 negotiations, and that their discussions resumed only through the fortuitous and independent efforts of a previously uninvolved party (Dr. Ravipudi). As discussed in § II above, both Thakkar and Maher testified that there was no prospect of a sale transaction at the end of 2014, because Aegis was not interested in selling any portion of the property. It was only after more than a year had passed, the parties were "reintroduced," they "started conversation again," and several months of negotiations followed, that Maher was even willing to entertain the prospect of selling a small lot to Thakkar's group. Further negotiations were required to agree on the precise size, and price, of the lot Aegis ultimately sold. In light of this evidence, Aegis satisfied any burden to prove that the initial negotiations were abandoned, and that those negotiations resumed through circumstances unrelated to Zelenak.

Point II is denied.

### Conclusion

The judgment of the circuit court is affirmed.

Alok Ahuja, Judge

All concur.