

# Missouri Court of Appeals
## Southern District

### In Division

JEANNIE E. HARPER,                                 )
                                                   )
    Claimant-Respondent,           )
                                                   )
vs.                                                )    No. SD37268
                                                   )
SPRINGFIELD REHAB AND HEALTH                       )    **Filed: February 6, 2023**
CARE CENTER/NHC HEALTH,                            )
                                                   )
    Employer-Appellant,            )
                                                   )
PREMIER GROUP INSURANCE                            )
COMPANY CORVEL ENTERPRISE                          )
COMPANY, INC. (TPA),                               )
                                                   )
    Insurer-Appellant,             )
                                                   )
and                                                )
                                                   )
TREASURER OF MISSOURI AS                           )
CUSTODIAN OF THE SECOND INJURY                     )
FUND,                                              )
                                                   )
    Additional Party-Respondent.   )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**<u>AFFIRMED</u>**

Springfield Rehab and Health Care Center/NHC Health and its insurer, Premier

Group Insurance Company Corvel Enterprise Company, Inc., (collectively "Employer"

unless the context shows that only the actual employer is intended) appeal the final award

of the Labor and Industrial Relations Commission ("the Commission") determining

Jeannie E. Harper ("Claimant") was permanently and totally disabled from an injury by

accident in isolation, and awarding Claimant future medical care. In six points, Employer

appears to claim the Commission committed errors of law in concluding Claimant

suffered an injury by accident, and that the Commission's findings that Claimant was

permanently and totally disabled and entitled to future medical care were not supported

by sufficient competent evidence. We deny each of Employer's points and affirm the

Commission's final award.

At the outset, we note that all of Employer's points fail to comply with Rule

84.04(d)(2), Missouri Court Rules (2022), which requires, in our review of an

administrative agency decision, that a point relied on "shall be in substantially the

following form: 'The [name of agency] erred in [identify the challenged ruling or

action], because [state the legal reasons for the claim of reversible error, including the

reference to the applicable statute authorizing review], in that [explain why, in the

context of the case, the legal reasons support the claim of reversible error].'" Other than

points IV and VI, none of the points include a reference to the applicable statute

authorizing review. This failure is important because Employer's points I through III and

V and VI appear to reference the legal reason for the claim of error as "undisputed facts"

or "undisputed testimony," neither of which are authorized grounds for review under the

statute (i.e., section 287.495.1, RSMo 2016) or constitution (i.e., Mo. Const. art. V, §

18).[1] Point IV references section 287.495.1(3) and (4), but fails to explain in an

---

[1] This is especially so in this appeal as the evidence was strongly contested, and the Commission expressly resolved conflicts in the testimony in favor of Claimant and two experts whose

2

understandable way why, in the context of the case, these legal reasons support the claim of error.  Further, points I, III, and V are multifarious because each point groups multiple, independent claims together and/or asserts for a single claim multiple separate and distinct reasons.  *See **Fowler v. Missouri Sheriffs' Retirement System***, 623 S.W.3d 578, 582-83 (Mo. banc 2021) ("point relied on is multifarious in violation of Rule 84.04 because it groups together multiple, independent claims"); ***Spire Missouri, Inc. v. Public Service Commission***, 618 S.W.3d 225, 234 n.7 (Mo. banc 2021) ("point is multifarious in that it asserts the PSC's decision regarding relocation expenses was error for two separate and distinct reasons").

These significant briefing deficiencies seriously impede our ability to review Employer's points impartially and without becoming an advocate for Employer.  As a result, in our discretion, we choose to decline to review on the merits, and to deny, each of Employer's points with the exception of subpart (B) of point I.  *See **Lexow v. Boeing Co.***, 643 S.W.3d 501, 508 (Mo. banc 2022) (declining to grant *ex gratia* review of either of the appellant's two points relied on because both points failed to comply with Rule 84.04(d)(2)); ***Hale v. Burlington Northern & Santa Fe Railway Co.***, 638 S.W.3d 49, 61 (Mo. App. S.D. 2021) ("This Court, in its discretion, may review all, some, or none of a multifarious point relied on.").  We grant *ex gratia* review of subpart (B) of point I because we believe we can sufficiently discern Employer's claim in that subpart to address the claim on the merits without impermissibly becoming an advocate for

_____

testimony supported Claimant's position.  Few of the relevant facts and little of the relevant testimony was undisputed.

Employer, and because the claim appears to be at the heart of Employer's challenge to the Commission's award.

Employer's claim in subpart (B) of point I appears to be that the Commission legally erred in finding "Claimant sustained [an] . . . accident" because the facts found by the Commission "failed to establish objective symptoms of an injury at the time and place of occurrence." We disagree.

**Factual and Procedural Background as Relevant to Subpart (B) of Point I**

On November 2, 2020, the parties appeared for hearing before an Administrative Law Judge ("ALJ") regarding Claimant's allegation that she injured her back in an accident on June 22, 2018, while working for Employer.

*Claimant's Testimony Before the ALJ*

Claimant was 69 years old at the time of the hearing.[2] Claimant has a degree in journalism and communications, a secretarial certificate, and a degree as a registered nurse. She has been in nursing for over the last 30 years.

On Friday, June 22, 2018, Claimant was working the night shift from 7 p.m. on June 22 until 7 a.m. on June 23. Around midnight, Claimant was helping a tech "give meds." The tech left the medicine cart at the end of a hall in which the cart was not supposed to be, and the cart was not against the wall but was "jutted out" "cattycorner" to the wall. In that position, the medicine cart was "a hazard for [Claimant's] patients, because they [had] to hold on to the rail to walk." Claimant "hurriedly" moved the medicine cart, retrieved the medicine she needed for the next patient, and then gave the medicine to the patient. Claimant testified the cart was "as tall as [Claimant], probably"

---

[2] Claimant was born in January 1951.

4

and had a water pitcher and other routine supplies, emergency supplies, medications for 100 people, and weighed "[a] lot" (Claimant estimated "[p]robably 100 lbs., or so").

Claimant had never had to push a cart like the medicine cart before, and does not push carts like the medicine cart "outside of work." Claimant demonstrated to the ALJ how she moved the medicine cart out of the way, and orally described her movements as: "I grabbed it about waist high, and . . . I used my hip and used my hips and back and just gave it a shove with everything I could, to get it up out of the way." Claimant explained that she has "some weakness" in her arms, and that is why she "had to use all of my strength" to push the cart over with her body. She "had to strain to get it. Like heavy, straining and pushing to get it moved back." She "felt something in [her] back when [she] did that, but [she] just kept working, cause usually when little things happen, you keep going. But [she] felt something, and it didn't go away. And that morning it was even worse." Claimant testified what she felt was "like a pull. Like you feel something pulling." On cross examination, Claimant confirmed she "developed back pain, at work that night," and her "best" thought was that pushing the medicine cart started the pain. Claimant thought that because, "that was the only time that I pushed that cart. And the other things, that I did, I had done those things all the time. And it was after I pushed that cart that I felt that." Claimant added that the pull she felt when she pushed the medicine cart "was pain" to her – she "felt something at that moment. It was a pull, and there was pain." "[L]ater when [Claimant] got out on the next round to walk," "the pain presented itself more." The claimed injury was to Claimant's "low back."

Claimant added:

So, later on that morning it was there. And it was a little bit more -- a little bit more stronger [sic] than what it was at first.

. . . .

By the time I left, I had began [sic] to have some trouble walking, and then when I got home and took my shower, and thought well I'll take some Tylenol and when I wake up it will be gone. So, that's what I did.

. . . .

[W]hen I woke up that night, I had to go to work that night, it was still there. So, I took some more Tylenol and went to work.
I had got to work and that's when it really showed up, because I had so much walking to do. I had rounds to make and all the patients that I had to check. That was a lot of walking.

Claimant told her boss about her injury on Monday morning, June 25, 2018, which was the soonest her boss could come in to work. Claimant also filled out a report of injury.

Claimant continued to work for Employer, but could not "do [her] job the same way." Claimant asked her boss for help, but staff "were always short." The medication prescribed caused her to be "groggy," and that is "why [she] sleeps during the day." If Claimant does not take the medication, she has "too much pain."

Claimant last worked for Employer in "early November" 2018. Claimant left her employment at Employer because:

I just couldn't -- it hurt so bad, I just couldn't go in any more. Or I just couldn't get out of bed. I had to call in and tell them I'm really sick, and get fussed out. And I just couldn't do it, I just couldn't get up to go to work. I was hurting too much.

Claimant added:

I couldn't do [the job I was hired for] though, because it would put me in jeopardy and put my patients in jeopardy, too. Because they could have got really hurt.

. . . .

6

I couldn't do that job, because there was too much walking. I couldn't walk all the halls. I was hurting so badly, that I couldn't even think clearly.

And it scares me to death that I might have given someone the wrong med. Or do the wrong thing. Pulling up insulin, if I had a headache, and I can't see, I may overdose someone.

I was not safe, for my patients.

. . . .

I did [prioritize what I did at the end].

I tried to . . . do a round, all the people -- when I come on, I would try to do one round, that's all I could do.

And I would try to give the pain meds to anybody who asked for a pain med. They would -- I would get them their pain med out. The insulin, the diabetics they had to have their insulin, so I knew I had to do that.

Some of the paperwork didn't get done. If we had people that wanted to go to the hospital, I took care of the phone work, and the paperwork, and sent them out and did the transfer. I just tried to do the important stuff and let some of the ordinary stuff go.[3]

On June 22, 2018, before her injury, Claimant's back was "good," and she was not "having any problems with [her] back" and was not taking any pain medication. In late May 2018, Claimant had a virus and experienced back pain "between [her] shoulder blades" "from coughing." The back pain was "not down low," and went away when the virus went away. Before her injury on June 22, 2018, Claimant did not require any "accommodations" from Employer, and was not "having any trouble at all walking."

*Commission's Final Award Allowing Compensation*

The Commission entered its final award on September 13, 2021, in which it (1) found "that the award of the ALJ allowing compensation is supported by competent and substantial evidence and was made in accordance with the Missouri Workers'

---

[3] On cross examination, Claimant again made clear that she did not "voluntarily" "quit and resign" from her employment with Employer, but "had to quit, because I [sic] unable to do the job, and I was putting myself and my patients in jeopardy."

7

Compensation Law," and (2) affirmed and adopted the award and decision of the ALJ that was issued February 10, 2021.[4]

The ALJ made the following findings of fact in her award and decision: (1) Claimant "credibly testified live at the hearing," and "[a]ll lay witnesses are credible[5] . . . I find Dr. Koprivica more credible and persuasive than Dr. Cantrell. I find Phillip Eldred's vocational opinion more persuasive than that of Bob Hosutt.";[6] and (2) Claimant "felt a pull at the time she moved the medicine cart." The ALJ included in her rulings of law: (1) "Claimant suffered an 'unusual strain' in her lower back when she pushed the heavy medicine cart . . . which produced objective symptoms of injury" based on Claimant's testimony that she "felt a 'pull' in her lower back" and "[s]hortly thereafter [during the same work shift] . . . had difficulty walking"; (2) "the accident was the prevailing factor in causing the injury and disability," and Claimant "was unequally exposed to the risk of injury at work" because she "did not push large medical carts . . . in her normal nonemployment life" with the result the accident "ar[o]se out of and in the course of the employment"; [and] (3) "Claimant is permanently and totally disabled from the last work accident in isolation."

**Standard of Review**

Under Mo. Const. art. V, § 18 (amendment adopted at special election Aug. 3, 1976), "[a]ll final decisions, findings, rules and orders" of the Commission "shall be

---

[4] One member dissented from the Commission's final award.

[5] A nurse who had worked with Claimant and Claimant's adult daughter also testified at the hearing.

[6] Dr. Koprivica and Mr. Eldred are experts whose testimony supported Claimant's position, and Dr. Cantrell and Mr. Hosutt are experts whose testimony supported Employer's position.

subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and . . . whether the same are supported by competent and substantial evidence upon the whole record." *See also Annayeva v. Special Admin. Bd. of the Transitional Sch. Dist. of St. Louis*, 597 S.W.3d 196, 198 (Mo. banc 2020). Further:

> The Commission's decision will be affirmed unless: "(1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award." *White v. ConAgra Packaged Foods, LLC*, 535 S.W.3d 336, 338 (Mo. banc 2017); § 287.495.1, RSMo 2000.[7] "Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the [C]ommission within its powers shall be conclusive and binding." § 287.495.1, RSMo 2000. In addition to findings of fact, this Court also defers to the Commission's determinations as to credibility of witnesses and the weight given to conflicting evidence. *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 664 (Mo. banc 2015).

*Id.* "Questions of law are reviewed *de novo*. [We are] not bound by the [C]ommission's interpretation and application of the law, and no deference is afforded to those determinations." *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 664 (Mo. banc 2015). Because the Commission in this case "affirm[ed] and adopt[ed]" and "incorporated" the award and decision of the ALJ, we review the ALJ's findings as if originally made by the Commission. *Annayeva*, 597 S.W.3d at 198 n.2.

**Analysis**

*Subpart (B) of Point I – The Commission Did Not Legally Err in Ruling Claimant Suffered an Accident Because the Commission's Findings Support Its Ruling that Claimant's Unusual Strain Produced at the Time Objective Symptoms of an Injury*

---

[7] Section 287.495 was last amended in 1998.

In subpart (B) of Employer's first point relied on, Employer appears to claim that the Commission legally erred in finding "Claimant sustained [an] . . . accident" because the facts found by the Commission "failed to establish objective symptoms of an injury at the time and place of occurrence."

"The determination of whether an incident was a compensable accident under the Workers' Compensation Law is a question of law that appellate courts review *de novo*." ***Clark v. Dairy Farmers of America***, 536 S.W.3d 801, 804 (Mo. App. S.D. 2018).

The Commission specifically stated in its rulings: "Claimant suffered an 'unusual strain' in her lower back when she pushed the heavy medicine cart . . . which produced objective symptoms of injury" based on Claimant's testimony that she "felt a 'pull' in her lower back" and "[s]hortly thereafter [during the same work shift] . . . had difficulty walking." The Commission did not legally err in ruling that Claimant's unusual strain "produced objective symptoms of injury" at the time.[8]

Section 287.120.1, RSMo Supp. 2017, provides in relevant part: "Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident or occupational disease arising out of and in the course of the employee's employment." In turn, section 287.020.2 and .3, RSMo Supp. 2017, in relevant part states:

> 2. The word "accident" as used in this chapter shall mean an unexpected traumatic event or unusual strain identifiable by time and place of

---

[8] In this subpart and point, Employer does not expressly challenge the factual findings included in this ruling as not supported by sufficient competent evidence. Employer's failure to do so is understandable as Claimant's testimony, which the Commission specifically found credible, was sufficient competent evidence to support the factual findings included in this ruling.

occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. An injury is not compensable because work was a triggering or precipitating factor.

.   .   .   .

(5) The terms "injury" and "personal injuries" shall mean violence to the physical structure of the body and to the personal property which is used to make up the physical structure of the body, such as artificial dentures, artificial limbs, glass eyes, eyeglasses, and other prostheses which are placed in or on the body to replace the physical structure and such disease or infection as naturally results therefrom. These terms shall in no case except as specifically provided in this chapter be construed to include occupational disease in any form, nor shall they be construed to include any contagious or infectious disease contracted during the course of the employment, nor shall they include death due to natural causes occurring while the worker is at work.

<u>Claimant's Unusual Strain Produced at the Time Objective Symptoms of an Injury</u>

Although the phrase "producing at the time objective symptoms of an injury" has been included in the definition of "accident" since the enactment of the Workers' Compensation Law in 1926[9] and was interpreted on a few occasions in the 1900's,[10] the legislature, in 2005, added a new subsection 10 to section 287.020. This new subsection provides in relevant part: "In applying the provisions of this chapter, it is the intent of the legislature to reject and abrogate earlier case law interpretations on the meaning of or definition of 'accident', 'occupational disease', 'arising out of', and 'in the course of the employment' to include, but not be limited to, holdings in [three specific judicial decisions and their progeny]." Section 287.020.10, RSMo Cum.Supp. 2005 (bolding of

---

[9] Section 13672a6(b), RSMo 1927 Supplement (approved by the people in a referendum vote on November 2, 1926 – *see* section 13672a78, RSMo 1927 Supplement).

[10] *See, e.g.*, ***Davies v. Carter Carburetor, Division ACF Industries, Inc.***, 429 S.W.2d 738, 749-50 (Mo. Div. 1 1968).

"accident" and the other three phrases identified by quotation marks omitted to conform to the current version of section 287.020.10, effective August 28, 2017).

As a result, in what we believe is a question of first impression, we must interpret the statutory phrase "producing at the time objective symptoms of an injury."

> The "primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *In re Boland*, 155 S.W.3d 65, 67 (Mo. banc 2005) (citation omitted). "If statutory language is not defined expressly, it is given its plain and ordinary meaning, as typically found in the dictionary." *Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891, 895 (Mo. banc 2009) (citation omitted).

***Young v. Boone Electric Cooperative***, 462 S.W.3d 783, 791 (Mo. App. W.D. 2015) (en banc).

One of the uses of "at" as a preposition is use "as a function word to indicate presence or occurrence in, on, or near." *See* Merriam-Webster, https://www.merriam-webster.com/dictionary/at (last visited January 24, 2023). One of the meanings of (1) the noun "symptom" is "something that indicates the existence of something else," and (2) the adjective "objective" when used in combination with "symptom" is "perceptible to persons other than the affected individual." *See* Merriam-Webster, https://www.merriam-webster.com/dictionary/symptom and https://www.merriam-webster.com/dictionary/objective (last visited January 24, 2023). Section 287.020.3(5), RSMo Supp. 2017, in relevant part defines "injury" to "mean violence to the physical structure of the body." Combining these meanings, the statutory phrase an unusual strain "producing at the time objective symptoms of an injury" should be interpreted in the circumstances of this case to mean an unusual strain producing at (i.e., near) the time objective symptoms (i.e.,

12

indications perceptible by persons other than Claimant of the existence) of an injury (i.e., violence to the physical structure of Claimant's body).

The Commission found that Claimant "had difficulty walking" later in the same shift during which she suffered the unusual strain. Claimant's difficulty walking would have been perceptible to persons other than Claimant, indicated the existence of violence to the physical structure of Claimant's body, and was produced near the time of the unusual strain. The Commission did not legally err in ruling that Claimant's unusual strain "produced objective symptoms of injury" at the time because the facts found by the Commission – i.e., Claimant "felt a 'pull' in her lower back" and "[s]hortly thereafter [during the same work shift] . . . had difficulty walking" – support that ruling.

Subpart (B) of Employer's first point is denied, and the Commission's award and decision is affirmed.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

GARY W. LYNCH, S.J. – CONCURS